# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Case No. 1:16-mc-00167-PAB**

**GREEN SOLUTION, LLC, a Colorado Limited
Liability Company;
GREEN EARTH WELLNESS, INC., a dissolved
Colorado Corporation
TGS MANAGEMENT, LLC, a Colorado Limited
Liability Company
S-TYPE ARMORED, LLC, a Colorado Limited
Liability Company; and
IVXX INFUZIONZ, LLC, a Colorado Limited
Liability Company**

  **Petitioners,**

  **v.**

**UNITED STATES OF AMERICA,**

  **Respondent.**

---

## PETITIONERS' RESPONSE TO UNITED STATES' MOTION TO DISMISS AND ENFORCE SUMMONSES

---

Petitioners, by and through their below signed counsel, here respond to

Respondent's United States Motion to Dismiss and Enforce Summonses' (**Dkt,** #7, hereinafter

("**MTD**") as follows:

## I.        INTRODUCTION

Using largely the same unpersuasive arguments advanced in related cases (See, **MTD,**

Page 2), Respondent now demands the production of extensive and largely duplicative

documents from third-party banks/financial institutions, despite Petitioners substantial voluntary

production of financial records.  In this case, Respondent has issued a series of third-party

summonses to multiple banks/financial institutions of Petitioners', for the illegitimate purpose of harassing Petitioners and conducting an unauthorized criminal investigation.

Respondent admits that it is targeting Petitioners' financial institutions under the guise of "determining the liability of any person for any Internal Revenue tax" Section 7602(a) "in an effort to gather information regarding Petitioners' income and expenses during 2013 and 2014…" (**MTD**, Page 7)  Respondent argues that it has the authority to "predetermine" violations of the Controlled Substances Act ("CSA") because Congress has expressed the intent of taxing unlawful income and gains (**MTD,** Page 8).

As argued previously, Respondent is conducting a criminal investigation, without proper justification, for the purpose of harassing Petitioners and their principals.  *Eric D. Speidell, Petitioner*, v. *United States of America,* Respondent, Case No. 1:16-mc-00162-PAB ("Case #162").   In Mr. Speidell' s case, Respondent served a different third party, the Colorado Dept. of revenue, Marijuana Enforcements Division ("MED") seeking  documents  from a third party which are wholly unnecessary to its stated purpose of routinely reviewing the taxpayers returns. In another related case, *The Green Solution, et. al v. United States*, 1:16-MC-00137-PAB. ("Case #137"), Respondent likewise sought irrelevant information from MED allegedly to confirm information in "routine" audits, but clearly for purposes of performing a criminal investigation to trigger the application of 28 U.S.C. 280E, triggering enormous criminal penalty.

These related cases show a disturbing pattern of harassment and overreaching by Respondent, under the pretext of conducting routine audits. As set forth herein, there are limits to respondent's authority to issue and request enforcement of its summonses.  In each case the taxpayers dispute by specific testimony and argument the authority of Respondent to conduct

what is tantamount to a "criminal" investigation in a "civil" audit context of crimes outside the Tax Code.

## II.  BACKGROUND

The instant case involves a different "group" of Petitioners, but involves many of the same issues set forth in the related Cases #137 and #162.    As a result, on August 10, 2016, these related Cases #137 and #162 were reassigned to this Courtroom. (Dkt. #5).

In the instant case, the Petition to Quash Summonses (Dkt. # 1) hereinafter, ("Petition" or "Pet.") , as set forth in Petition Exhibits 1-3, Respondent issued summonses to Petitioners' banks and financial institutions; Wells Fargo, Verus Bank of Commerce ("Verus Bank") and Partner Colorado Credit Union ("Partner Colorado").

The Petition (Paragraphs 14-16) describes in detail the extensive bank records requested by these summonses. The Petition also describes the pre-issuance facts. (**Pet**. Paragraphs 17-20) Of specific importance is the fact that bank records were provided to Respondent (**Pet**., Paragraph 20).  Petitioners incorporate by reference the arguments set forth in the Petition (**Pet**., Pages 6-14.)  The Petition is also supported by the Declaration of Tim Sell (**Dkt** #3) which is also incorporated herein by reference.  Mr. Sell's description of his interaction with Mr. David Hewell, Pages 2 and 3, clearly disputes the Respondent's stated purpose of its audit of Petitioners.

In response to the Petition, Respondent filed its **MTD** arguing for dismissal of the Petition pursuant to Fed. R. Civ. P. 12(b) (6) and for an order enforcing the summonses pursuant to 26 U.S.C. § 7604(a) and 7609(b)(2)(A).

Based exclusively upon the Declaration of its Revenue Agent David Hewell, ("Hewell Declaration", Exhibit 1, Dkt. # 7), Respondent contends that its summonses are issued for a legitimate purpose; that is to "make predicate determinations of illegality", and further contend that the information sought is not in the Respondent's possession (**MTD**, Page 12.)  Respondent argues Court should order enforcement of the summonses and that Petitioners' request for an evidentiary hearing should be denied.

### III.        STANDARD OF REVIEW FED. R. Civ. P. 12  (b)(6)

Respondent requests dismissal of the Petition alleging a failure to state a claim upon which relief can be granted.  It is axiomatic, that Courts strongly disfavor motions to dismiss.   Every reasonable inference drawn from the pleadings and any supporting documents thereto, must be made in favor of Petitioner and against Respondent.   "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs* v. *Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)  (citations and quotation marks omitted).

 "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall* v. *Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff has pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Iqbal evaluation is a two-step analysis. First, the

4

court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusion, bare assertions, or merely conclusory.  Id. at 679–81.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. Id. at 679.

## IV.  ARGUMENT
## BANK SUMMONSES DO NOT SATISFY THE POWELL TESTS

The Hewell Declaration suggests only very general and routine grounds to justify the issuance of it summons to MED. ("determining the taxpayer's correct tax liability", Paragraph 3), However, as stated in the Petition, in light of the extensive information already provided to Respondent it is unknown why the IRS would be issuing these massive requests to third party financial institutions. Petitioners are justifiably concerned that Respondent is conducting an unauthorized criminal investigation.

### A. There Must Be a Finding of Illegality in Order for Section 280E to Apply.

In the Green Solutions Response to the Motion to Dismiss [Dkt #. 16, Case # 137 PAB, pages 6-9. with Exhibits 3,4 and 5 thereto-]  the Petitioners therein explained  that regardless of the Government's motivation, it is clear that in order for Section 280E to apply, Petitioners' conduct must be illegal under the federal criminal drug laws. Petitioners, in this case, incorporate the Green Solutions Response by reference.  No such finding of illegal trafficking of drugs under the Controlled Substances Act ("CSA") has been made by any Court,  nor have Petitioners been given the opportunity to defend themselves against any such charges, clearly denying Petitioners their right to equal protection under law, the right to a trial by jury,  their right to object to unreasonable searches and seizures and right

against self incrimination, potential double jeopardy consequences, and other important constitutional protections.

Respondent argues that Congress allows the taxation of illegally obtained income (**MTD** Pages 8-10), which is true. However, Respondent puts the cart in front of the horse. Just because illegal and legal income is treated the same under the Tax Code, does not give the IRS authority to conduct investigations of whether taxpayers are committing crimes outside the Tax Code. In order for Section 280E to be called into play and potentially disqualify the taxpayer's otherwise legitimate deductions from income, there must be a threshold determination of a crime being committed outside the Tax Code. Respondent simply lacks the authority to make that determination.

### B. Summonses Are Not Issued for a Legitimate Purpose

Respondent agrees that the standards for review by the Court are found in *United States v Powell*, 379 U.S. 48 (1964), including, among other criteria, that the summons must serve a "legitimate purpose". In the instant case, enforcement of the summonses does not serve a legitimate purpose. Inherent in determining the presence or absence of a legitimate purpose, is the issue of whether Respondent is acting in good faith. In the instant case, Respondent is conducting an overly broad, unreasonable investigation designed to harass Petitioners.

Generally, Section 280E does not apply to taxpayers. Its application is triggered *only* if the taxpayer is "trafficking in a controlled substance." By its nature, Section 280E subjects only that limited class of taxpayers against whom it can be enforced, to a severe monetary penalties, resulting in substantially greater tax liability by disallowing all ordinary and necessary business deductions permitted to all other taxpayers. Respondent contends "the purpose of the audit is to determine the correctness of the Green solution

6

Entities federal tax returns and their correct federal tax liabilities." (Hewell Declaration, Paragraph 28). On the contrary, Respondent's actions are not "routine". The penal statute the IRS is attempting to invoke against the Petitioners  in this case is used only in those rare cases where a crime has been committed.

Further, as it has also stated in related cases, Respondent incorrectly asserts that "the IRS is not investigating Petitioner to impose any drug related criminal liability on them." ( **MTD,** Page 2), knowing full well that it is purposefully attempting to impose what can only properly be described as a "crime tax" on Petitioners.  See, Sell Declaration [Dkt. #3, Case # 137-PAB, and Dkt. #3 Pages 2-3 in instant case)].

C.       **The Information Sought by the Summons is Not Relevant to a Legitimate Purpose**

Contrary to Respondent's contentions, the documents requested from the financial institutions are not relevant to a legitimate purpose.  (**MTD**, page 11).  The summons power of the IRS on third parties should not be used to investigate purported violations of federal drug law crimes.

In *United States v. Coopers & Lybrand*, 550 F.2d 615 (1976), the IRS sought the enforcement of a summons pursuant to 26 U.S.C. § 7602 from a third-party.  *Coopers Lybrand* holds that Respondent's power to enforce summonses is not unlimited.  In declining enforcement of the summons, the Court concluded that the IRS failed to make the requisite showing that the requested documents were relevant to the tax investigation.

Citing *Powell*, the Tenth Circuit found that "investigative powers of § 7602 *are not without limitation*," and that a taxpayer "may challenge the summons on any appropriate grounds." *Coopers & Lybrand, supra.*, citing with approval *Reisman v. Caplin*, 375 U.S. 440 at 449, 1964, 84 S. Ct. 508 at 513, 11 L. Ed. 2d 459.  Under *Powell*, once a summons is challenged,

the court must determine whether the summons seeks information relevant to legitimate purpose and is not meant to "harass" the taxpayers, or for any other purpose reflecting on the good faith of the particular investigation.  *Powell* at 58.  The Court also cited with approval *United States v. Matras* 487 F. 2d 1271 (8th Cir.) stating:

> "Certainly a taxpayer should not erect roadblocks for the purpose of frustrating or preventing the IRS from a full-scale inquiry of the liability of the taxpayer.  By the same token, the government should not, for the mere sake of its convenience, impose unnecessary burdens on a taxpayer in conducting an audit or investigation for tax liability, particularly where, as here, there is no indication of a purpose to escape any tax liability.  The term "relevant" denotes and encompasses more than "convenience."  Consequently, we are not persuaded to fault the district judge for concluding that the government failed to sustain its burden of proof by alleging general need for a "roadmap."  If we were to accede to the government's view, it is difficult to imagine corporate materials that might *not* contribute to a more comprehensive understanding of the workings of the corporation, and thus according to the government, be deemed relevant to the tax investigation."

*United States v. Coopers & Lybrand*, 550 F. 2d at 620-21, citing *Matras*, 487 F. 2d at 1274-1275, also citing *U.S. v. Theodore*, 479 F. 2d 749 (4th Cir. 1973).

The *Coopers* Court concluded that a summons *will* be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought, and endorsed the idea protections are "particularly appropriate where the demand for records is not directed to the taxpayer but to a third party who may have had some dealing with the person under investigation." *Id.*

As admitted, Section 280E, as being enforced by the IRS is not a tax, but a criminal penalty.  *Montana Dept. of Revenue v. Kurth Ranch*, 511 U.S. 767 (1994).  After the Kurths pleaded guilty to drug charges, Montana attempted to collect the state tax imposed on the possession and storage of dangerous drugs.  The U.S. Supreme Court held the Montana tax violated the constitutional provision against successive punishments for the same offense, as the

assessment on harvested marijuana resulted in a tax *eight* times the product value, and was a form of double jeopardy, as federal fines and forfeitures had already been satisfied.

The *Kurth Ranch* Court, citing *A. Magano Co. v. Hamilton*, 292 U.S. 40, 46 and *United States v. Halper*, 490 U.S. 435 found that labels do not control a double jeopardy subjects only that limited class of taxpayers against whom it can be enforced, to a severe monetary penalties, resulting in substantially greater tax liability by disallowing all ordinary and necessary business deductions permitted to all other taxpayers.

Respondent contends "the purpose of the audit is to determine the correctness of Petitioners' federal tax returns and ascertain true federal tax liabilities. (Hewell Declaration, Paragraph 28). On the contrary, Respondent's actions are not "routine". The penal statute the IRS is attempting to invoke against the Petitioners is used only in those rare cases where a crime has been committed.

Further, Respondent incorrectly asserts that "the IRS is not investigating Petitioners to impose any drug-related criminal liability on them" that (**MTD**, Page 2), knowing full well that it is purposefully attempting to impose what can only properly be described as a "crime tax" on Petitioners. See, Sell Declaration [Dkt #3, Case # 137-PAB and Dkt, # 3, instant case].

The auditing of businesses operating lawfully under Colorado law, as well as the statements made by Mr. Hewell, indicate the Respondent's true purpose is not simply to verify income of Petitioners. If this were the case, Respondent could simply augment the documents already produced, narrow request concerning substantiation of income, sales, and other information relevant information from Petitioners. Instead, in an effort to trigger the application of Section 280E, Respondent requests information from third parties to substantiate purported "trafficking" in a controlled substance to utilize of the punitive aspects of the statute.

inquiry finding that a tax is not immune from double jeopardy inquiry simply because it is labeled as a "tax".  The IRS here seeks to impose the punitive nature of Section 280E and its deterrent purpose upon Petitioners, resulting in an extremely high monetary penalty.  Importantly, Section 280E applies only in the case of illegal "trafficking" of a controlled substance.  This is like the "tax" the *Kurth Ranch* Court found to be conditioned upon "the commission of a crime" rather than the generation of revenue.  Thus, the "tax" is a criminal penalty for which criminal jeopardy attaches.  *Id.*  The IRS does not have jurisdiction to find criminal wrongdoing outside of the Tax Code or to invoke criminal penalties for violations of the CSA, and thus such a penalty is improperly assessed.

*Kurth Ranch* distinguishes between a "tax" and a "penalty"; a tax being revenue-raising in nature, a penalty being assessed for punitive and deterrent value.  Furthermore, *Kurth Ranch's* reasoning illustrates that 280E is a form of criminal jeopardy.  It only applies in the event that the taxpayer commits a criminal act.  Thus, Section 280E is in reality a "crime tax" which the IRS seeks to impose administratively without any judicial findings against the Petitioner.  Moreover, by imposing this penalty, a subsequent prosecution of the Petitioner will severely, cripple their business, which is the true purpose of Respondent's actions, and not merely the traditional purpose of an audit

**D.    The Information Sought from the Banks is Already in the IRS Possession or Can Be Provided By Petitioners**

A summons should only be issued when:  (1) the information required is vital to the investigation; (2) the taxpayer or third-party summonee is unreasonably refusing to cooperate; and (3) the information cannot be easily obtained from other sources.  See, **G. SUMMONS AND ENFORCEMENT** by George Johnson and Marvin Friedlander.

https://www.irs.gov/pub/irs-tege/eotopicg93.pdf.  Here, Petitioners have already cooperated

with Respondent and have expressed a willingness to cooperate further to provide information.

The relevant information has already been provided to Respondent.  The summons requests very

broad expansive documentation far beyond what would be necessary to simply corroborate

income and deductions, but is a "fishing" expedition being conducted  in the hope of uncovering

evidence to trigger Section 280E penalties.

Respondent also agrees that another element it must demonstrate under Powell is that the

information sought is not in the IRS' possession. Respondent contends that the necessary

"information" is not in its possession as contemplated by the *Powel* test.  (MTD, Page 12).    As

noted, Mr. Hewell's Declaration fails to acknowledge the length to which the Petitioners have

gone to produce bank records, receipts and general ledgers, from which net taxable income can

be determined.  Nor does Mr. Hewell explain what the IRS cannot obtain the information from

other sources, instead of conducting its *de facto* criminal investigation.  Respondent has

requested documents from a third party, to simply harass the taxpayer and to go on a "fishing

expedition."  *United States  v Harrington*, 388 F.2d 520,523 (2nd Cir. 1968).

## E.        An Evidentiary Hearing Should Be Held

Since the IRS is seeking to invoke a "crime tax" and place the Petitioners in criminal

jeopardy under the Controlled Substances Act without any authority to enforce the CSA, the

actions by Mr. Hewell are not in good faith and should be considered harassment. At the very

minimum, the Court should hold a hearing to determine whether investigation by the IRS of

taxpayers to determine

Given the disputed testimony concerning the underlying purposed expressed by Respondent for the purpose of the audits and numerous summonses issued, the requirement that basis    Under Fed.R.Civ.P. 45(d), and *Coopers & Lybrand*, at 620 and the Petitioners may request the summonses be modified when an undue burden is present. *United States* v *La Salle Nat'l Bank, 437 U.S. 298(1978).* Respondent has conducted numerous de factor criminal investigations against Colorado entities far beyond any recognized authority broadening its unlawful investigation to include individuals who may be related to other entities. Additionally the Court should review documents already produced to determine whether Respondent's numerous summonses are reasonable.

Respondent improperly relies upon *U.S. v Clarke*, 134 S.Ct. 2361, 189 L. Ed. 2d 330 (2014) to argue an evidentiary hearing is not required.  *Clarke* recognizes what is obvious in this case; that Petitioner has not had the opportunity to conduct any discovery or examination of any Respondent representatives.  Clarke holds that "the taxpayer is entitled to examine IRS agent when he can point to specific facts or circumstances "plausibly raising an inference of bad faith". Targeting of individuals, conducting unlawful criminal investigations, and otherwise harassing principals constitutes a prima facie showing of bad faith, which would entitle Petitioner to a hearing under *Clarke*.

In related Case #137 on October 24, 2016 the Respondent filed its Reply and Response to Motion to Dismiss and Enforce Summonses (Dkt. #18 Case #137).  Therein, Respondent attacked  the Sell Declaration, contending "Mr. Sell has no personal knowledge of the IRS' internal deliberations in this audit" and arguing that "Mr. Sell's declaration is not evidence that the IRS is operating a surreptitious criminal investigation under the Controlled Substances Act." (Dkt. #18, pages 2-3).  While Petitioner disagrees as to the weight of the Sell Declaration, the

fact that Petitioner has *not* been able to conduct any examination of Respondent's agents or conduct any type of discovery from Respondent is ***precisely,*** why an evidentiary hearing is vital. *La Salle Nat'l Bank, supra.* Without a hearing the Court is unable to explore the reasonableness' of the Respondent's request and whether summonses are merely interposed for harassment or for another illegitimate purpose.  Since the IRS is seeking to invoke a "crime tax" and place the Petitioner in criminal jeopardy under the Controlled Substances Act without authority to enforce the CSA, Respondent's actions are not in good faith and should be considered harassment.

**WHEREFORE**, Petitioners hereby request an order from this Court quashing all summonses referenced herein, and that the Court conduct and in-camera review of documents to be produced from the Petitioners financial institutions, to IRS to determine the reasonable scope and legitimacy of purpose of summons pursuant to Powell. To further its efforts in determining these matters, Petitioners further request the Court hold an evidentiary hearing in the matter.

**DATED:**          October 28, 2016

s/ James D. Thorburn
James D. Thorburn,
Richard Walker
Attorneys for the Petitioners
THORBURN WALKER, LLC
5460 South Quebec Street, Suite 310
Greenwood Village, Colorado 80111
(303) 646-3482
jdt@thorburnlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th[h] day of October, 2016 I electronically filed the above and foregoing using the CM/ECF system which will send notification to such filing to the following e-mail addresses:

LINDSAY L.CLAYTON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044


*/s/ James D. Thorburn*