IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-mc-00167-PAB

GREEN SOLUTION, LLC, a Colorado Limited
Liability Company;
GREEN EARTH WELLNESS, INC., a dissolved
Colorado Corporation;
TGS MANAGEMENT, LLC, a Colorado Limited
Liability Company;
S-TYPE ARMORED, LLC, a Colorado Limited
Liability Company; and
IVXX INFUZIONZ, LLC, a Colorado Limited
Liability Company,

       Petitioners,

       v.

UNITED STATES OF AMERICA,

       Respondent.

**UNITED STATES' REPLY TO RESPONSE TO
MOTION TO DISMISS AND ENFORCE SUMMONSES**

The United States of America replies to Petitioners' response to the United States' motion to dismiss and enforce summonses as follows:

**Table of Contents**

INTRODUCTION ............................................................................................................... 2
DISCUSSION ...................................................................................................................... 2
  I.   Petitioners Continue to Inappropriately Conflate This Civil Tax Audit with a Non-Existent Criminal Drug Investigation. ........................................................................................ 2
  II.  Petitioners Fail to Refute that the Summonses Meet the Powell Standard ...................... 3
    A.   Legitimate Purpose: Section 280E is a tax provision that the IRS must enforce, not a criminal penalty. ................................................................................................................ 3
    B.   Relevance: The bank records are relevant to a legitimate civil audit. ........................... 6
    C.   Possession: Petitioners admit that the IRS does not have the bank records. ................ 6
    D.   All Powell factors are met. ................................................................................................ 8
  III.  No Hearing is Required to "Narrow" the Summonses or Grant the Motion to Dismiss and Enforce. ......................................................................................................................... 8
CONCLUSION .................................................................................................................... 9

1

## INTRODUCTION

Petitioners' quarrel in this case and other related cases is not with the IRS, but rather with Section 280E of the Internal Revenue Code.[1] This Court must decide whether the IRS's audit of marijuana businesses, in which it must apply Section 280E, is improper simply because that statute exists. The essence of Petitioners' argument is that it is unfair and inappropriate for the IRS to apply Section 280E and, as a result, the IRS should be prohibited from fully auditing marijuana businesses. Petitioners' argument finds no support in the law. In an attempt to bolster their case, Petitioners continue to conflate a civil tax audit with a criminal drug investigation. Petitioners' arguments are inapplicable in these civil proceedings, and fail to refute that the IRS meets the *Powell* factors supporting enforcement of the summonses at issue. As a result, this petition (and other related petitions) must be dismissed and the summonses enforced.

## DISCUSSION

### I. *Petitioners Continue to Inappropriately Conflate This Civil Tax Audit with a Non-Existent Criminal Drug Investigation.*

In their original petition and again in their response, Petitioners inappropriately conflate the IRS's civil tax audit with a criminal drug investigation. Petitioners take various authorities and statements out of context in an attempt to make their case. First, Petitioners cite allegations made by their Chief Financial Officer, Tim Sell, for the proposition that the only purposes for a civil audit are to "confirm income" and "support deductions," and that the only purpose of the civil audit at issue here is to confirm that Petitioners are trafficking in marijuana. [Dkt. # 8] at 3, 12-13. Mr. Sell's declaration is not evidence that the IRS is operating a surreptitious criminal investigation under the Controlled Substances Act. First, Mr. Sell has no personal knowledge of the IRS's internal deliberations in this audit; therefore, he is not competent to refute Revenue Agent Hewell's declaration. Second, as explained in detail in the United States' Motion to Dismiss, it is proper for Revenue Agent Hewell to make the predicate determination that

---

[1] Unless otherwise stated, all "Section" references are to Title 26 of the United States Code, also known as the Internal Revenue Code of 1986, as amended.

Petitioners traffic in marijuana in order to apply Section 280E. [Dkt. # 7] at 8-10. Given how openly Petitioners operate their marijuana business, it borders on absurd for them to contest that this is what they do.

Petitioners expand their claim to argue that the IRS audit is depriving them of a whole host of constitutional rights, including "equal protection under law, the right to a trial by jury, their right to object to unreasonable searches and seizures and right against self-incrimination, potential double jeopardy consequences, and other important constitutional protections." [Dkt. # 8] at 6. These protections generally do not apply to IRS administrative summonses in the way Petitioners suggest. The IRS "need not meet any standard of probable cause to obtain enforcement of [its] summons." *United States et al. v. Troy's Welding Shop, Inc.*, 1975 WL 3578, *2 (10th Cir. Mar. 19. 1975) (rejecting claims that summons violated equal protection, Fourth and Fifth Amendments, due process, and other constitutional rights). Rather, the only standard the IRS need meet is that articulated in *Powell*. For the reasons set forth in the United States' motion and additional reasons addressed below, the summons in this case readily meets that standard.

Contrary to Petitioners' allegations, Congress has explicitly charged the IRS with making a civil determination, for tax purposes, as to whether or not Petitioners are engaged in the sale of marijuana. *See,* Section 280E. The mere fact that the IRS is now doing what Congress has instructed it to do is not evidence that the IRS is engaged in a clandestine criminal investigation of Petitioners under the Controlled Substances Act. The IRS's good faith effort to determine whether and how Section 280E applies to Petitioners does not constitute harassment or a criminal drug investigation. Accordingly, it provides no basis to quash the summonses at issue here.

## II. Petitioners Fail to Refute that the Summonses Meet the Powell Standard

    A. *Legitimate Purpose: Section 280E is a tax provision that the IRS must enforce, not a criminal penalty.*

Petitioners argue that the audit here cannot be legitimate because Section 280E is "not a tax, but a criminal penalty." [Dkt. # 8] at 8. In support, they cite a case dealing with a Montana law that imposed a very high tax on the possession and storage of dangerous drugs. *Department*

3

*of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 770 (1994). Yet far from supporting Petitioners' claims, that case reaffirms the principle that "the unlawfulness of an activity does not prevent its taxation." *Id.* at 778. The problem in *Kurth Ranch* was not Montana's tax itself, but how it was imposed. Indeed, Montana "no doubt" could have collected its tax on marijuana possession "if it had not previously punished the taxpayer for the same offense, or, indeed, if it had assessed the tax in the same proceeding that resulted in his conviction." *Id.* Instead, Montana imposed a tax of "more than eight times the drug's market value," and imposed it "only after the taxpayer has been arrested." *Id.* at 780-782. Accordingly, the Court concluded that the tax was a "concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of double jeopardy analysis." *Id.* at 783.

Section 280E differs in critical respects from the legislative provision at issue in *Kurth Ranch*. First, Section 280E is not a tax, but rather a provision that denies deductions. This distinction is critical, as deductions are a matter of legislative grace to which no taxpayer is necessarily entitled. *E.g., New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934) (explaining that "[t]he power to tax income. . . .is plain and extends to the gross income. Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed."). Thus, it is not at all clear that Section 280E can even be considered a "penalty" like the tax at issue in *Kurth Ranch*.

Second, unlike the Montana tax, Section 280E does not depend on a charge or conviction for criminal conduct. While the statute references the Controlled Substances Act, there is no requirement whatsoever that a taxpayer actually be prosecuted or convicted in order to be subject to Section 280E. Accordingly, the result of Section 280E is more like the provision at issue in *United States v. Sanchez*, which addressed a law imposing a "special tax ranging from $1 to $24 on 'every person who imports, manufactures, produces, compounds, sells, deals in, depenses [*sic*], prescribes, administers, or gives away marihuana.'" 340 U.S. 42, 43 (1950). Such a tax is "a legitimate exercise of the taxing power despite its collateral regulatory purpose and effect" of discouraging marijuana businesses. *Id.* at 45. Further, the tax was not a criminal penalty because

it was not conditioned upon the commission of a crime and was collected through "civil procedure." *Id.*; *see also*, *Simmons v. United States*, 476 F.2d 715, 718 (10th Cir. 1973) (upholding tax addressed in *Sanchez* as "valid civil liability" even as imposed on "unlawful possessor of marihuana.").

Petitioners also ignore the numerous cases decided since *Kurth Ranch* that distinguish state taxes on illegal drug activity where those taxes are not conditioned on a prior arrest or conviction. *See*, *Simson v. Bouker,* 249 F.3d 1204 (10th Cir. 2001) (addressing tax on dealers in marijuana and other controlled substances imposed by Kansas Drug Tax Act); *Vick v. Williams,* 233 F.3d 213 (4th Cir. 2000) (stating that "*Kurth Ranch* does not stand for a general principle that all drug taxes are punishment-rather than a civil penalty. . ."), *Padavich v. Thalacker*, 162 F.3d 521 (8th Cir. 1998), *Marigold v. Comeaux*, 945 F.2d 409 (Table), 1991 WL 190111, *1 (9th Cir. 1991). Like the state taxes at issue in these cases, Section 280E does not depend on any prior criminal prosecution or conviction. Rather, the IRS makes its own civil determination of whether the provision applies. Therefore, Section 280E is akin to the state tax laws considered by many jurisdictions, including the Tenth Circuit: it lacks the "'unusual features' which rendered the tax in *Kurth Ranch* so punitive in nature as to transform it into a criminal punishment." *Simson*, 249 F.3d at 1211.

Third, even assuming Petitioners' arguments were meritorious, *Kurth Ranch* provides them with no relief in this proceeding. At most, it is a dispute for a later day: if Petitioners are subsequently investigated and prosecuted under the Controlled Substances Act, they may argue that double jeopardy prohibits the proceeding. Petitioners appear to admit as much. [Dkt. # 16] at 13. At this stage, Petitioners' argument is entirely hypothetical: there is no criminal proceeding, and the IRS has not even finished its audit. Thus, Petitioners' argument must be rejected.

Finally, Petitioners argue that the IRS's "true purpose" is to use Section 280E to "severely, if not completely, cripple their business." Petitioners provide no evidence for this assertion, and it is refuted by the Declaration of Revenue Agent Hewell. Moreover, Petitioners are not the only marijuana business operating in Colorado. Many such businesses comply with

5

Section 280E without going out of business. Indeed, the sale of marijuana in Colorado is almost a $1 billion industry. *E.g.*, http://www.thecannabist.co/2016/02/09/colorado-marijuana-sales-2015-reach-996-million/47886/. As a matter of fairness, the IRS must enforce Section 280E equally on all of these businesses. That includes Petitioners. The IRS has no dog in this fight beyond ensuring that the tax laws are fairly and evenly applied. The IRS's interest in obtaining the summoned material is a legitimate one.

    B.  *Relevance: The bank records are relevant to a legitimate civil audit.*

Petitioners suggest that bank records are irrelevant to a civil tax audit, and that the IRS's only purpose for seeking them here is "to substantiate purported 'trafficking' in a controlled substance to utilize. . . .the punitive aspects of [Section 280E]." [Dkt. # 8] at 9. Petitioners do not explain how bank records will substantiate that they traffic in marijuana, nor do they explain why the financial data disclosed in those records is irrelevant to a civil audit. Indeed, it is difficult to imagine a record that would be more useful in a tax audit than a bank record. As the Tenth Circuit has found, even bank records outside of the time frame under audit can be properly summoned upon the testimony of a Revenue Agent that the records "would aid the IRS in ascertaining the accuracy of the taxpayers' returns." *United States v. Southwestern Bank and Trust Co.*, 693 F.2d 994, 996 (10th Cir. 1982). The United States has met the relevance threshold here, and Petitioners' blanket statements fail to show that the records are irrelevant.

    C.  *Possession: Petitioners admit that the IRS does not have the bank records.*

Petitioners do not dispute that the IRS lacks the bank records sought in the summonses, but instead argue that their own partial production of bank and accounting records should obviate the government's request. [Dkt. # 8] at 10-11. This is not the standard. The government does not have to prove that Petitioners have failed to cooperate with the audit or otherwise provide information to the IRS. *Id.* Rather, the government is entitled to compare the bank data with the data Petitioners have provided to the IRS thus far. Indeed, even if Petitioners had provided their own copies of the bank records, the government would still be entitled to summon them from the banks themselves in order to compare them and ensure their accuracy. *E.g., Liberty Financial*

6

*Services v. United States*, 778 F.2d 1390, 1393 (9th Cir. 1985) (finding that the IRS is "entitled to compare for accuracy" the same records held by different parties). Yet the case here is even stronger for the government, since the IRS does not have complete bank records from any source. Petitioners' response effectively concedes that the third *Powell* factor is met.

Petitioners nonetheless rely on internal IRS "continued learning materials" from the tax-exempt entity area to suggest that the IRS can only issue a summons when a taxpayer is unreasonably refusing to cooperate. [Dkt. # 8] at 10, citing IRS Exempt Organizations "Summons and Enforcement" guidance available at http://www.irs.gov/pub/irs-tege/eotopicg93.pdf. First, Petitioner selectively quotes guidance from the publication, ignoring the opening language affirming that an IRS examiner "can obtain. . . .any information that may be relevant to the investigation." *Id.* at 1. Second, Petitioner fails to put the source in context. The source is one of myriad "continuing professional education" materials provided to Exempt Organizations Specialists. *See generally*, https://www.irs.gov/charities-non-profits/exempt-organizations-continuing-professional-education-technical-instruction-program. The advice Petitioner references is neither binding on Revenue Agent Hewell, nor particularly relevant to him.

Yet even if IRS guidance were binding in this proceeding, Revenue Agent Hewell was acting well within the boundaries of the guidance that applies to his audit. IRS bank summonses are sufficiently routine that they are addressed in their own section of the Internal Revenue Manual. I.R.M. 4.10.3.8 (Bank Record Reconciliations), *available at* https://www.irs.gov/irm. There is no requirement or recommendation that an examining agent seek bank records only after a taxpayer has failed to cooperate. While the Manual acknowledges that bank record analysis "is more important in an examination where the records are inadequate, nonexistent or possibly falsified," the "depth" of any bank account analysis depends on the "circumstances of each examination." *Id.* Here, Petitioners have failed to provide complete records to Revenue Agent Hewell. Therefore, Revenue Agent Hewell is acting well within the bounds of an ordinary audit in seeking third party bank records. In sum, Petitioners point to nothing suggesting that the IRS

7

possesses a complete set of their bank records, nor have they shown that Revenue Agent Hewell's request is otherwise improper.

### D.  All *Powell* factors are met.

Petitioners do not contest that the IRS followed all administrative steps in issuing the summonses. Thus, all four components of the *Powell* test are met, and the summonses should be enforced.

### III. No Hearing is Required to "Narrow" the Summonses or Grant the Motion to Dismiss and Enforce.

Petitioners' final argument is that the Court should hold a hearing. Petitioners offer two reasons. First, Petitioners seek a hearing to allow them to conduct discovery. [Dkt. # 8] at 11-13. Second, Petitioners believe a hearing is necessary to provide the Court with an opportunity to modify the summonses. *Id.* Neither rationale provides grounds for a hearing.

Petitioners' first argument concerning discovery is circular one: they argue that the Court should hold an evidentiary hearing to allow them to gather the evidence needed to show that an evidentiary hearing is warranted. [Dkt. # 8] at 12-13. That is not the standard. As was recently reaffirmed by the Supreme Court, "summons enforcement proceedings are to be summary in nature." *Clarke v. United States*, 132 S. Ct. 2361, 2367 (2014) (citations omitted). To be entitled to a hearing, a taxpayer must come forward with sufficient facts or circumstances to support an inference of institutional bad faith. [Dkt. # 7] at 14. Petitioners simply assert, without more, that the IRS is improperly "[t]argeting. . . .individuals, conducting unlawful criminal investigations, and otherwise harassing principals." [Dkt. # 8] at 12. Such "naked allegations of improper purpose" are "not enough" – a taxpayer must offer "credible evidence supporting his charge." *Clarke*, 132 S. Ct. at 2367.

Petitioners offer no such evidence. Rather, Petitioners argue that the Court can infer bad faith from the IRS's legitimate efforts to enforce Section 280E. This is not evidence of bad faith, but simply an example of the IRS enforcing a statute that it must enforce by act of Congress. The fact that Petitioners dislike the statute cannot change that conclusion. Accordingly, Petitioners

have failed to show they are entitled to an evidentiary hearing, and the Court need not hold a hearing in order to rule in favor of the United States.

Nor is an evidentiary hearing appropriate simply as a summons rewriting exercise. First, the requests in the summonses are already quite narrow. For the years and entities under examination, the summonses seek specifically enumerated bank records dated during a limited time period. [Dkt. # 7-1] at Ex. 7. Petitioners offer no credible explanation for why the Court needs an evidentiary hearing to interpret these requests. They are neither overly broad, nor difficult to understand. The Court can make a decision on the record before it.

## CONCLUSION

For the foregoing reasons, the Court should issue an order dismissing the petition and enforcing the summons issued to Petitioners' banking institutions.

Dated:  November 10, 2016

Respectfully submitted,

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General

*/s/ Lindsay L. Clayton*
LINDSAY L. CLAYTON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-307-2956 (v)
202-307-0054 (f)
Lindsay.L.Clayton@usdoj.gov

Of Counsel:
ROBERT C. TROYER
Acting United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

    James D. Thorburn (jdt@thorburnlaw.com)
    Richard A. Walker (rwalker@thorburnlaw.com)
    *Counsel for Petitioners*

                                          */s/ Lindsay L. Clayton*
                                          LINDSAY L. CLAYTON
                                          Trial Attorney, Tax Division
                                          United States Department of Justice