1    IN THE UNITED STATES DISTRICT COURT
2         FOR THE DISTRICT OF COLORADO

Civil Action No. 17-mc-52-RM
3
NUTRITIONAL ELEMENTS INC. et al.,
4
     Plaintiffs,
5
vs.
6
UNITED STATES OF AMERICA,
7
     Defendant.
8    _____

9
                    **REPORTER'S TRANSCRIPT**
10                       Oral Argument

11   _____

12        Proceedings before the HONORABLE RAYMOND MOORE, Judge,

13   United States District Court for the District of Colorado,

14   occurred at 10:30 a.m., on the 18th day of April,  2017, in

15   Courtroom A-601, United States Courthouse, Denver, Colorado.

16

17    Proceeding Recorded by Mechanical Stenography, Transcription
      Produced via Computer by Tammy Hoffschildt, 901 19th Street,
18         Room A251, Denver, Colorado, 80294, (303) 292-1088

19

20                       **APPEARANCES**

21        James Thorburn and Richard Walker, Attorneys at Law,

22   Thornburn Walker, LLC, 5460 South Quebec Street, Suite 330,

23   Greenwood Village, CO, 80111, appearing for the Plaintiffs.

24

25

1                          *   *   *   *   *

2                         **PROCEEDINGS**

3

4        (In open court at 10:31 a.m.)

5            THE COURT:  Please be seated.  All right.  We're here

6    on an M C matter, 17-mc-52, Nutritional Elements, Inc. et al.,

7    versus the United States.  I should have, but don't have ...

8    well, I will take entry of appearances, although I recognize

9    counsel from the prior matter.

10           MR. THORBURN:  Sure, Your Honor.  Good morning.

11   James Thornburn, on behalf of the petitioners.  Mr. Walker is

12   present.

13           THE COURT:  Good morning to both of you, as well.

14           You know, when this came in, rather than kind of keep

15   putting it through the process, it seemed to me that the

16   simplest thing to do was just set a hearing and talk about

17   this, because if ever there was a circumstance where I'm sure

18   there's no drama attached to the likely outcome, I would say it

19   would be this case.

20           I would also say that I imagine that when the case got

21   moved from Judge Matsch and it landed here, there was a *dammit*

22   moment that arose from counsel, and I don't mean anything bad

23   by that; that would be my reaction, as well.

24           What I'm referring to, and counsel knows, is that on

25   this 280E issue, I have, essentially, ruled on it in a slightly

1    different context in *Alpenglow Botanicals*, which was 16-cv-258,

2    and now -- that case was in the context of a Motion To Dismiss.

3    This case is in the context of a Motion To Quash A Subpoena,

4    and rather than let this kind of hang on the vine, I said, all

5    right, let me give them a second crack at the apple -- crack --

6    bite at the apple, and see where we are.

7        And again, I'm not trying to be disrespectful to

8    counsel's position, it's just that we are where we were before,

9    which is, *What, if anything, can the I.R.S. do with regard to*

10   *enforcing or investigating or making rulings based on 280E, in*

11   *a state where marijuana has been legalized, both recreational*

12   *and medically*?

13       So let me hear from -- I know we don't have government

14   counsel here, but realistically, it's not as if I'm looking to

15   them.  I'm looking at my own prior determinations.

16       MR. THORBURN:  Certainly, Your Honor.

17       THE COURT:  And so that's what makes it one of those

18   where it went on a faster track, perhaps, than normal.  I don't

19   even know whether they were served with the Motion To Quash?

20       MR. THORBURN:  Yes, they were.  May I speak from here?

21       THE COURT:  Yes, absolutely.  Fine.

22       MR. THORBURN:  Yes.  They were served by certified

23   mail.  I do have the certified mailing here, if the Court is

24   interested, and then we also did Lindsay Clayton, who was also

25   current counsel with *Alpenglow*, we communicated with her prior

4

1    to filing of this, and when you hit -- when you issued the

2    order for the oral argument, we also emailed a copy of your --

3    of your minute order to her.

4            So she is aware.  I understand why they might not have

5    entered an appearance yet; since it really isn't their time.

6            THE COURT:  Right.  Let me hear from you.

7            MR. THORBURN:  Okay.  The question, as the Court is

8    aware, is where can the I.R.S. go with this issue?  What is

9    their extent of investigating Federal drug-law violations?  You

10   have read the brief.  I think one of the things that the Court

11   should be aware of, here, right now, is that a very similar

12   question, right now, is up in the Tenth Circuit, and it's *Green

13   Solution vs. United States*.  I can give you the case number,

14   it's 16-1281.

15           THE COURT:  Is it out of this District?

16           MR. THORBURN:  Yes, yes, sir.

17           THE COURT:  Which of my colleagues?

18           MR. THORBURN:  It's Judge McHugh --

19           THE COURT:  No, no, my colleagues here.

20           MR. THORBURN:  It was Judge Matsch.  Excuse me.

21           THE COURT:  When you say a similar issue, help me

22   understand.

23           MR. THORBURN:  The question is, in that case, *Does the

24   I.R.S. have the authority to do the investigations*?  There are

25   two levels to the issue that's up on the Court of Appeals.  One

1    is an A.I.A. question of whether or not it can even be heard in

2    the way that it was brought.   Judge Matsch ruled that he felt

3    under the *Lowry* case, that it could not be heard.   Then he did

4    a -- said*, Well, I think that the I.R.S. has power anyway*.   It

5    was one of those one-liner type of orders on that piece.   Tenth

6    Circuit has taken up the question.   We went to oral argument on

7    March 23rd --

8          THE COURT:   Okay.

9          MR. THORBURN:   -- thereafter briefing.   During the

10   oral argument, and it was one thing that I don't know that

11   either party really expected, but we understood where they were

12   going after the questioning, Judge McHugh and Judge Matheson

13   both questioned the government attorney, extensively, said,

14   *What are the standards for the I.R.S. to determine that a*

15   *taxpayer is subject to 280E*?   And the government attorney

16   really couldn't answer the question.   As the Court is aware,

17   280E, there aren't really any standards.

18         THE COURT:   And there weren't even when they were

19   relying on a conviction.

20         MR. THORBURN:   Well, that's true.   But the question

21   was, at that point -- well, and where I will go with this, they

22   kept on asking the same question, and it was obvious that this

23   question was very, very important to them, because they didn't

24   just stop at one question on this -- on the same issue.

25         We started looking at the question, and it goes to the

1    deligation doctrine.  And we provided some citation authority

2    in your briefing, the question is that for something to be

3    delegated to an agency, there has to be standards, so the Court

4    can review the agency action, and determine whether or not the

5    standards were followed.

6            Judge Gorsuch, in a case that we just recently

7    uncovered, and I think --

8            THE COURT:  Let's give him his now due,

9    Justice Gorsuch.

10           MR. THORBURN:  That's right.  And he also decided the

11   Feinberg case, which is, of course, winding its way in here.

12   He discussed the deligation doctrine extensively in United

13   States vs. Nichols, there, and it's 784 F.3d, 666, Tenth

14   Circuit, 2015, and he discussed this issue, and the issue of

15   the standards.  What we think where the Tenth Circuit was

16   going, and there's going to be ruling sometime in the near

17   future.

18           THE COURT:  Right.

19           MR. THORBURN:  Is that there's not any standards, and

20   if there's not any standards, can't be a lawful deligation.  So

21   we think that's where the Tenth Circuit is going.

22           THE COURT:  You hope that's where the Tenth Circuit.

23           MR. THORBURN:  Well, we certainly hope.  Yes.  Now,

24   you know, given where things have gone in the past on these

25   issues --

1          *THE COURT:*  And the only reason I say that is, you

2     know one does not read the Circuit from an advocate's

3     perspective without a certain degree of hope and anticipation

4     and interpretation, everything from the actual questions asked

5     to when the particular Judge leans back in the chair or leans

6     forward; been there, done that.

7          *MR. THORBURN:*  I was going to say, sounds like you

8     have argued one or two.

9          *THE COURT:*  Right.  And of course that's not their

10    doing, it's counsel trying to figure out which way the wind is

11    blowing, and you don't find that out until they actually issue

12    their opinion, so.

13         *MR. THORBURN:*  But at least what we're seeing is that

14    it's an issue that they are interested in on this.  So we think

15    that -- well, we're going to have a decision one way or

16    another.  It's under advisement.  And so given what we've seen,

17    in the past one to two months after oral argument, we're

18    probably seeing --

19         *THE COURT:*  Oh, now you are being just ... well,

20    optimistic.  And again, look, I don't mean to suggest that

21    there is any time limit by which this -- that the Circuit has

22    to do that.  What comes to mind is, I remember in a criminal

23    context, something that won't matter to you, what's called the

24    *Johnson* issue, as to whether or not invalidation of a

25    particular provision of criminal statute applied in other

1    contexts, and I was told when a habeas petition was filed, *Oh,*

2    *yeah, the Circuit, we had argument on that, we are expecting --*

3    yeah.  It didn't play out that way.

4          So look, I don't -- I don't quarrel with you, nor do I

5    quibble with the Circuit in terms of when the opinions going to

6    come out.  I'm just saying, you don't know anymore than I do.

7          *MR. THORBURN:*  Of course.

8          *THE COURT:*  You are hopeful that it's going to be a

9    month or two, but there are times when it takes longer, and

10   this may be one of those times, especially where it seems, at

11   least as I look at it, as an issue where counsel on both sides

12   are engaging in a certain degree of creativity, and I don't

13   mean that pejoratively.  What I mean, there's not a lot out

14   there and every case that you point to is by analogy, more

15   often than it is, that it deals with 280E or this regulation or

16   deligation or whatever.  Even in the briefing that you have

17   given me, when you talk about, you know, it needs to engage in

18   rule making, what you are referring me to is a case that

19   involves the F.A.A. and certain pilots out of Alaska, and my

20   reaction to that is, on one hand I understand that it's in the

21   universe of what you are discussing, on the other, it seems

22   different on any number of levels, not the least of which is

23   it's the F.A.A. and not the I.R.S., and then secondly, it's a

24   circumstance where what happened is that the F.A.A., at least

25   in Alaska, was taking the position that certain guides, I think

1    it was, didn't have to comply with -- I don't remember whether

2    it was fees or licenses or something of that nature; whereas,

3    the rest of the country, they apparently took a different

4    position.  Ultimately, a rule changed, that basically said, *No,*

5    *what Alaska is doing, isn't going to cut it*, was challenged,

6    and the Court said, *No, you have to listen to them and give*

7    *them an opportunity to comment.*

8           Well, we don't have a change here in terms of what the

9    I.R.S. is doing, 280E is what 280E was, which is, if you are

10   engaged in drug trafficking in violation of Federal or State

11   law, that's been what it was, that still is what the I.R.S.

12   code is.  So there's no change there.  I grant you that there

13   is the argument that, *Well, what's changed is what they look at*

14   *to rely upon, or establish the drug trafficking,* but that's a

15   little different than this F.A.A. case.  I say that not to be

16   critical, because I understand, as we move into new eras in the

17   law, sometimes the prior case law is not as, obviously, useful

18   as it is when we're dealing with an old, familiar issue and

19   trying to figure out how to extend it or whether to extend it.

20          I guess my reaction to the invitation to, *Hey, just*

21   *wait, The Circuit, they be a speaking soon*, is well, honestly,

22   I'm not sure what context they could possibly speak to, but

23   here the I.R.S. hasn't made a determination.  The question is

24   just simply, *Can they get the summons out, the subpoenas out,*

25   *to gather information*?

1          Now, would I be shocked if they, after they collected

2    data, determined that 280E applied for your clients, I don't

3    think I would be anymore shocked than you would, but having

4    said that, they haven't done it yet.  So to say to me that well

5    before they can apply -- even if I were to say that the Circuit

6    says they need to have some standard in place, before they can

7    make the application of 280E to your client, even assuming that

8    that is four corners, what the issue is in front of the

9    Circuit, and that the Circuit came down favorably to you, it's

10   another issue whether or not they can simply gather information

11   to look at the issue of whether or not they will make that

12   determination.  I mean, why should -- there's a lot of

13   assumptions going on here, but assuming that the Circuit is

14   going to rule your way in some context, why should I stop the

15   train at this juncture, when presumably, if what you are saying

16   is true, again, we don't know what the I.R.S. is going to do by

17   way of a 280E determination, only because it hasn't happened

18   yet.  But assuming that they make such a determination, you

19   would be able to challenge it at that juncture, as an improper

20   determination based on this anticipated Tenth Circuit case law.

21          So why was -- how does the one necessarily drive my

22   answer here?

23          *MR. THORBURN:*  Well, policy standards.  They have to

24   be doing it for a proper purpose.  What makes this kind of a

25   clean decision, one way or the other, in this case, is that

1    they are seeking METRC™, and METRC™ has little or nothing to do

2    with income and expenses, and if I may approach, I do have a

3    copy of the ... this is -- Your Honor, this is actually from

4    the Department of Revenue website, and describing what METRC™

5    is.  I guess to say it in a sentence, it's the plant-tracking

6    system.

7              THE COURT:  Right.

8              MR. THORBURN:  It has really nothing to do with income

9    and expenses.  It -- it's how the plants are tracked; who has

10   possession of plants at any given time.  Who the plants are

11   transferred to.  Those type of things.  If -- well if -- if it

12   had to do with income and expenses we could certainly

13   understand a reasoning that this would be for a proper purpose.

14   But the only purpose that this could be, here, is for purposes

15   of determining whether or not somebody has violated the

16   Controlled Substance Act.

17             THE COURT:  That's the way you keep saying it, and I

18   am not going to ask you to stop saying it that way, because I

19   appreciate it, but the way I prefer to say it is for the

20   purpose of determining whether or not somebody is covered by

21   280E; meaning, whether they are engaging in drug trafficking in

22   violation of -- I just want to say it exactly the way it's said

23   it in 280E.  I want to say in violation of State or Federal

24   law.

25             MR. THORBURN:  The infamous 77 words.

1          THE COURT:  Right.

2          MR. THORBURN:  I believe it says a taxpayer in their

3    trade or business is trafficking in a Schedule I or II

4    controlled substance, prohibited by a State or Federal law.  I

5    think that's the piece of it there.

6          THE COURT:  Well, it sounds a little more specific

7    than I remember it, but ultimately sometimes there are

8    distinctions without a difference.  No deduction or credit

9    shall be allowed for any amount paid or incurred during the

10   taxable year carrying on any trade or businesses, if such trade

11   or business consists of trafficking in controlled substances,

12   within the meaning of Schedule I and II of the Controlled

13   Substances Act, which is prohibited by Federal law, or the law

14   of any state in which such trade or business is conducted.

15          So that's the language that we're looking at.  All

16   right.  They are looking to see whether or not a 280E

17   determination will be made.

18          MR. THORBURN:  And, of course, I understand the Court

19   doesn't agree.  It appears that they have to make a finding

20   that there's been unlawful trafficking.  Trafficking --

21          THE COURT:  They can't make that finding until they

22   look at the data.

23          MR. THORBURN:  Certainly.  But if there -- if -- going

24   back to the allegation, if they haven't been delegated that

25   authority, it would seem a question of whether or not they were

1   trafficking would not be a proper purpose, under PAL.

2          THE COURT:  Again this becomes -- sometimes the law

3   dissents into the realm of linguistics, and this may be one of

4   those circumstances, because whether or not it is the proper

5   purpose, I don't think you and I would have much disagreement

6   that it would not be a proper purpose if the purpose was to

7   engage in a criminal prosecution, and whether we carefully

8   parse our words, because you are saying they are making a --

9   essentially, a criminal finding of illegality, and my view of

10  it is they are making a determination that the conduct that is

11  prohibited by 21 U.S.C. 841 is occurring; that doesn't mean

12  it's a criminal prosecution.  In fact, it's absolutely not a

13  criminal prosecution.  At least not -- well, not in *Alpenglow*,

14  and here it's even further removed from it than that, because I

15  don't -- nothing has been done that would enable me to

16  determine that this somehow is a criminal prosecution which is

17  afoot.  Certainly, there's no reason to believe that any kind

18  of conviction occurs; that any kind of referral to the U.S.

19  Attorney's Office occurs; that any kind of fine or punishment

20  covered by the Federal drug laws occurs, to the extent that

21  there may be some potential argument that an excessive fine is

22  moving into the realm of criminal sanction.  Certainly at this

23  juncture we are way too early to make that determination.

24          So I understand where you are coming from on all of

25  this.  I just didn't want to -- although I understand that you

1    would have been fine with me leaving it hanging for awhile.    I

2    get that.   Ultimately, it just seems silly, from my

3    perspective, given that I have just recently ruled that the

4    I.R.S. is not prohibited from applying the tax code as written,

5    which includes 280E, and the only thing that I see that is

6    different, apart from context -- contextual difference, is

7    actually more harmful to you than helpful to you in this case,

8    because you are further removed from a 280E application.   You

9    are just at the stage where you are asking me to quash the

10   subpoenas, but the only difference between the matters that I

11   saw in that case and this case, is this notion of whether or

12   not there needs to be rule making, and notwithstanding, and I

13   appreciate the disclosure of the Circuit's purported interest

14   in the issue in some context, that I -- and I am not saying

15   it's misrepresented to me, I'm just simply saying I'm a

16   stranger to it.

17            *MR. THORBURN:*  Of course.   I'm the advocate.

18            *THE COURT:*   I understand, and I get that, but even so,

19   advocates aren't -- I'm not going to say that an advocate is

20   going to put his or her spin on the facts in a representation

21   as to what happened at an oral argument.   It is what it is.

22            But even recognizing that, I'm sitting here and I am

23   looking saying, *Boy, the case law that I'm pointed at really*

24   *doesn't suggest anything to me that is close to on all fours,*

25   *or even reasonably analogous to the situation that's before me.*

1    The issue with whether or not somebody is engaged in

2    trafficking of marijuana, by asking for information where

3    tracking of marijuana is done, seems like a pretty

4    straightforward kind of proposition, and frankly, hardly

5    anymore unreliable than I suppose in some respects, than the

6    conviction would be.  You know, if all of these plants are

7    tracked, and they all end up in a particular business, in a

8    district where the State permits the sale of marijuana, I don't

9    think it's a great leap to say that businesses engaged in the

10   selling of that marijuana.

11        Now, whether you want to call that criminal conduct or

12   not, that's -- that's the advocacy in all of us, if you would,

13   that leads to that, but I just don't see this as substantially

14   different than what I ruled in Aspen Glow (sic) I'm sorry,

15   *Alpenglow*, although, I'm sure Aspens do glow, as well, and so I

16   guess I'm really just giving you an opportunity to make your

17   record.

18        So what I'm going to do is shut up, let you make your

19   record, and then do whatever we need to do.

20        *MR. THORBURN:*  Well, Your Honor, we certainly have

21   discussed quite a bit, and your -- you are probably more

22   knowledgeable of the issues, although maybe we respectfully

23   disagree with your position.

24        *THE COURT:*  Understood.

25        *MR. THORBURN:*  You are probably more knowledgeable of

1    the issues than any other member of this Court, at present.

2           Part of the concern, you have probably heard comments

3    by Sean Spicer and Jeff Sessions about whether or not there's

4    going to be enforcement action.  We're involved in another

5    case, that -- well, it was the *Feinberg* case that

6    Justice Gorsuch ruled on, in that, and if I may approach, I

7    want to show a letter, so you can understand part of the

8    concern --

9           *THE COURT:*  Oh, I get the concern.  I mean,

10   ultimately, let's cut to the chase, if you give the government

11   information, and then the -- the leniency is lifted, shall we

12   say, you may have stepped in it, in a major way, or perhaps not

13   stepped in it so much as had the shifting sands move under your

14   feet to where your people are being looked at for, I don't

15   know, some criminal prosecution.  There's a lot of ifs that are

16   involved here.

17          *MR. THORBURN:*  Certainly.

18          *THE COURT:*  If things change.  If there's no notice.

19   If it's retroactive, instead of prospective.  If the summons

20   indicates this type of conduct that would be prohibited.  If

21   ... well, there's a lot of things that are in that daisy chain

22   of ifs, and of course, asking the Court to figure out what

23   politicians may -- that's not fair.  Not politicians.  People

24   who are in the Executive Branch may or may not do, with respect

25   to the exercise of their powers and rights, that's even worse

1    than trying to figure out what the Circuit is going to do.

2         MR. THORBURN:  What we think is going on, and again --

3    if you ask me to put a document in front of you proving, I

4    can't do that.

5         THE COURT:  Right, I understand.  Go ahead.

6         MR. THORBURN:  But what we understand, is that

7    overall, at least on the I.R.S. level, there's something known

8    as the Marijuana Project that we are aware that the Department

9    of Justice and D.E.A. have been training the agents in doing

10   these investigations.  What we're concerned about, and we think

11   that it's not being publicized in any way, and what we think is

12   going on is a parallel investigation between D.O.J. and I.R.S.,

13   and that this is actually part of the larger parallel

14   investigation that's going on.

15        Can I prove it positive today?  No, I can't.  But

16   everything that we are hearing, and where this -- where this

17   letter that -- Mr. Ortner is counsel for the -- for the Denver

18   District of the I.R.S.  Everything appears that we are having a

19   parallel investigation, and the summonses for this information

20   is in furtherance of the parallel investigation.

21        THE COURT:  I mean, of course, there's nothing wrong

22   with parallel investigations.  It may be something wrong with

23   crossing the streams, if you would, with perhaps the I.R.S.

24   obtaining something for a civil purpose and then using it for a

25   different purpose.

18

1        MR. THORBURN:  Right.

2        THE COURT:  And I am not saying that that is a certain

3   wrong or even something that's going on, but simply saying

4   there are parallel investigations, that happens.

5        MR. THORBURN:  But we're very concerned, especially

6   with 6103(i)(3), that the I.R.S. may share with the Department

7   of Justice, it appears that they are sharing with the

8   Department of Justice.

9        THE COURT:  I mean, but it's not like it's the biggest

10  secret in the world.  I mean, walk down the street, I don't

11  think you get a block from the courthouse before you see the

12  businesses that are out there.

13       MR. THORBURN:  Certainly.

14       THE COURT:  And all of this is a matter of public

15  record, at this juncture.  I don't mean that that makes your

16  concern less than valid.  Go ahead.  It's your record and I

17  am -- I'm backing up on my word of shutting up.

18       MR. THORBURN:  It's quite all right, Your Honor,

19  because one thing is that you are educating us, and, you know,

20  on your feelings on this.

21       It's -- it's true, but there's been some very heinous

22  criminal acts that have occurred right in public, but the

23  defendant has some rights.

24       THE COURT:  I get that.  I get that.  And, of course,

25  if we were sitting here in a criminal case, with a criminal

1   prosecution, my views on various matters as they pertain to the

2   particular case may not be the same as they are at this

3   juncture, because we would not be at the same juncture.  We

4   would be somewhere in a different setting, in a different

5   context and with a different set of issues, but we're really

6   not there yet.

7        I thought that somewhere along the line you mentioned

8   that there was a similar, related subpoena or summons, I don't

9   recall which, in front of Judge Brimmer.  Is there anything

10  that happened with that?

11       MR. THORBURN:  There's nothing that has happened on

12  those, yet.  There is -- there are probably a half dozen that

13  are in front of Judge Brimmer right now, and he has not ruled

14  on them and those are primarily Green Solution -- Green

15  Solution entities are under audit.  Those relate to the Green

16  Solution audit.  I think there may actually be one of

17  Nutritional Elements that is in front of him too.

18       THE COURT:  And the only reason I ask, is, you know,

19  to the extent that this is a developing issue, I wanted to see

20  if there were any horizontal developments occurring from my

21  colleague.  Go ahead.

22       MR. THORBURN:  None -- none at this time.

23       Your Honor, our concern, we don't -- we don't think

24  that the I.R.S. has authority.  We understand that the Court

25  respectfully disagrees.  We don't think that the I.R.S. has

1  authority.  We think, especially given what we've learned

2  through the Tenth Circuit oral argument that we're now getting

3  into deligation-doctrine standards and then also the issue of

4  rule making.

5        So those are the primary things.  The other ... the

6  rest of them are really familiar things that you have seen from

7  *Alpenglow*.  I don't think I need to repeat myself, you know

8  those well.

9        THE COURT:  No.  And I agree with you, I'm just, I

10  suppose, the simplest way of doing it, is saying, you and I are

11  in agreement that the oral argument and discussion and opinion

12  in *Alpenglow* is essentially incorporated into the reasoning of

13  today's proceedings.

14        MR. THORBURN:  Yes.

15        THE COURT:  Even though we're not reading it into the

16  record, or repeating it, there's a certain recognition of, *We*

17  *have been -- we have had this discussion before*.

18        MR. THORBURN:  Correct.

19        THE COURT:  And not that someone has had this

20  discussion, you and I, directly, have had this discussion and

21  it's resulted in an opinion with which you disagree.  As you

22  have that right.  I understand that there's reconsideration or

23  something that's hanging out there, that I will get to, so that

24  you can get that up to the Circuit, if you need to, it may be

25  that they, as you hope, do something on the front end, that

1    makes the outcome obvious.

2            MR. THORBURN:  Unless the Court deems otherwise,

3    probably a one-sentence denied order would be sufficient.

4            THE COURT:  Well, let's just do it as an oral, the

5    motion -- the Petition To Quash, which is **Document Number 1**,

6    Quash Summonses is denied on the grounds as discussed today,

7    but elaborated more fully in the similar ruling, although the

8    context was different, in 16-cv-258 Alpenglow Botanicals, LLC

9    vs. United States of America, which involved the 280E issue,

10   which involve the same issue, as well as counsel for

11   plaintiffs, in that case, is counsel for the petitioners, in

12   this case, and so there is a certain familiarity that all of us

13   have with this, but without going on and droning on and on and

14   on, ultimately for the reasons stated in my opinion and order

15   in Alpenglow, I think that the I.R.S. has the right to proceed

16   to make 280E determinations, and we are further removed from

17   that question here, because this is simply the question of

18   whether or not they have the right to request information or

19   data or not request, to obtain information and data, which

20   would enable them to, arguably, make a 280E determination,

21   which may or may not be in favor of the petitioners here.

22   Although I recognize the odds on a non-280E determination are

23   probably substantially less than the odds on a 280E

24   determination, and I don't mean that to suggest that there's

25   something, I don't know, dirty or untold about the business of

1    the petitioners here.  I just think that we know what we're

2    talking about, and I recall that the last time, you were very

3    careful not to admit that *Alpenglow* was engaged in said

4    business, and I would expect you to take the same position

5    here, and so I'm not going to push the point.

6            *MR. THORBURN:*  Precisely.  Thank you, Your Honor.

7            *THE COURT:*  All right.  That's it.  Is there anything

8    further?

9            *MR. THORBURN:*  Well, the only other thing I would ask,

10   although *Alpenglow* case has been called, even if it's a

11   one-sentence denied if --

12           *THE COURT:*  I will get you something quickly.

13           *MR. THORBURN:*  That would be nice.  We can bring these

14   both up together.

15           *THE COURT:*  Okay.  That's fair.

16           *MR. THORBURN:*  Okay.  Thank you very much.

17           *THE COURT:*  All right.

18           *THE COURTROOM DEPUTY:*  All rise.  Court is in recess.

19       (Recess at 11:10 a.m.)

20

21                        **REPORTER'S CERTIFICATE**

22       I certify that the foregoing is a correct transcript from

23   the record of proceedings in the above-entitled matter.  Dated

24   at Denver, Colorado, this 24th day of April, 2017.

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*S/ Tammy Hoffschildt*
Tammy Hoffschildt