**PUBLISH**

FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

May 2, 2017

Elisabeth A. Shumaker
Clerk of Court

| | |
|---|---|
| THE GREEN SOLUTION RETAIL, INC., a Colorado corporation; KYLE SPEIDELL,<br><br>    Plaintiffs - Appellants,<br><br>v.<br><br>UNITED STATES OF AMERICA; INTERNAL REVENUE SERVICE; JOHN KOSKINEN, Internal Revenue Service Commissioner; DAVID HEWLETT,[\*] in his official capacity, Auditor for the Internal Revenue Service,<br><br>    Defendants - Appellees. | No. 16-1281 |

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:16-CV-00257-RPM)**
_____

James D. Thorburn, Thorburn Walker, LLC, Greenwood Village, Colorado (Richard Walker, with him on the briefs), for Plaintiffs-Appellants.

Patrick J. Urda, Attorney, Tax Division (Caroline D. Ciraolo, Principal Deputy Assistant Attorney General; Diana L. Erbsen, Deputy Assistant Attorney General; Gilbert S. Rothenberg, Attorney; Richard Farber, Attorney; and Robert C. Troyer, Acting United

---

[\*] Mr. Hewlett was referred to as such throughout the proceedings, including the district court's judgment and the subsequent notice of appearance filed with this court. However, there is mention (and accompanying exhibits demonstrating) that his name is actually David Hewell. Because it is unclear, and neither party moved to amend the name, we retain the designation of David Hewlett for purposes of this decision.

States Attorney, with him on the brief), United States Department of Justice, Washington, D.C., for Defendants-Appellees.

───────────────────────────────

Before **HARTZ**, **MATHESON**, and **McHUGH**, Circuit Judges.

───────────────────────────────

**McHUGH**, Circuit Judge.

───────────────────────────────

## I. INTRODUCTION

The Green Solution Retail, Inc. and one of its owners, Kyle Speidell (collectively, Green Solution), sued to enjoin the Internal Revenue Service (IRS) and related parties from investigating Green Solution's business records. The district court dismissed Green Solution's complaint for lack of subject matter jurisdiction, concluding the Anti-Injunction Act and the Declaratory Judgment Act bar this action. The court relied on our decision in *Lowrie v. United States*, where we held that lawsuits challenging "activities leading up to and culminating in" an assessment are barred. 824 F.2d 827, 830 (10th Cir. 1987). On appeal, Green Solution contends the district court had jurisdiction to hear its claims because the Supreme Court has implicitly overruled *Lowrie* in its recent decision *Direct Marketing Association v. Brohl*, 135 S. Ct. 1124 (2015). We conclude we are still bound by *Lowrie* and affirm.

## II. BACKGROUND

Green Solution is a Colorado-based marijuana dispensary with several locations across the state. The IRS is currently auditing Green Solution's tax returns for the 2013 and 2014 tax years to determine whether it should apply 26 U.S.C. § 280E (I.R.C.

2

Case No. 1:16-mc-00167-PAB  Document 22  filed 05/10/17  USDC Colorado  pg 3 of 20
Case 1:16-cv-00297-RPM  Document 23  Filed 05/02/17  USDC Colorado  Page 3 of 20
Appellate Case: 16-1281     Document: 01019803379     Date Filed: 05/02/2017     Page: 3

§ 280E), which forbids federal tax deductions and credits to companies trafficking in a "controlled substance" as defined by the Controlled Substances Act (CSA). The IRS made initial findings that Green Solution trafficked in a controlled substance and is criminally culpable under the CSA. The IRS then requested that Green Solution turn over documents and answer questions related to whether Green Solution is disqualified from taking credits and deductions under § 280E.[1] It is undisputed the IRS has not made an assessment or begun collection proceedings.

Green Solution sued the IRS and related parties in the United States District Court for the District of Colorado, seeking to enjoin the IRS from investigating whether it trafficked in a controlled substance in violation of federal law, and seeking a declaratory judgment that the IRS is acting outside its statutory authority when it makes findings that a taxpayer has trafficked in a controlled substance. Green Solution claimed it would suffer irreparable harm if the IRS were allowed to continue its investigation because a denial of deductions would (1) deprive it of income, (2) constitute a penalty that would effect a forfeiture of all of its income and capital, and (3) violate its Fifth Amendment rights.

The IRS moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). According to the IRS, Green Solution's claim for

---

[1] In connection with its investigation of Green Solution, the IRS issued a summons to Colorado's Marijuana Enforcement Division seeking "information about the type of products sold, the weight of the products sold and the identity of [Green Solution's] purchasers." Green Solution filed a petition to quash the motion, which is currently pending in the United States District Court for the District of Colorado. *See* No. 1:16-mc-00137 (D. Colo., filed June 27, 2016).

3

injunctive relief is foreclosed by the Anti-Injunction Act (AIA), which bars suits "for the purpose of restraining the assessment or collection of any tax." I.R.C. § 7421(a). Similarly, the IRS asserted that the claim for declaratory relief violated the Declaratory Judgment Act (DJA), which prohibits declaratory judgments in certain federal tax matters. 28 U.S.C. § 2201.

The district court agreed with the IRS that the AIA and DJA barred Green Solution's claims, relying on *Lowrie v. United States*, where we held that the AIA applies "not only to the actual assessment or collection of a tax, but [also] to activities leading up to, and culminating in, such assessment and collection." 824 F.2d 827, 830 (10th Cir. 1987). The court further concluded that Green Solution's request for declaratory relief on the ground the IRS was acting outside of its authority was similarly barred by the DJA. Accordingly, the court dismissed the action with prejudice for lack of subject matter jurisdiction. Green Solution timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

### III.  DISCUSSION

The Controlled Substances Act (CSA) makes it unlawful to knowingly or intentionally "manufacture, distribute, or dispense . . . a controlled substance." 21 U.S.C. § 841(a)(1). Despite its legalization in twenty-eight states (and Washington, D.C.) for medical use and in eight states (and Washington, D.C.) for recreational use, marijuana is still classified as a federal "controlled substance" under schedule I of the CSA. *Id.* § 812(c)(10); 21 C.F.R. § 1308.11 (Schedule I); *see also* Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 81 Fed. Reg. 53,688, 53,688 (Aug. 12, 2016)

4

("[M]arijuana continues to meet the criteria for Schedule I."). Schedule I drugs have "a high potential for abuse" and are classified as those for which there is "no currently accepted medical use in treatment in the United States." 21 U.S.C. § 812(b)(1)(A)–(B).

Although still illegal federally, the Justice Department has declined to enforce § 841 when a person or company buys or sells marijuana in accordance with state law. In 2015 and 2016, Congress reinforced this arrangement by defunding the Justice Department's prosecution of the exchange of medical marijuana where it is legal under state law. Consolidated and Further Continuing Appropriations Act, 2015 Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332–33 (2015); *see also United States v. McIntosh*, 833 F.3d 1163, 1169–70 (9th Cir. 2016).

But while "today prosecutors will almost always overlook federal marijuana distribution crimes in Colorado," it does not mean the "tax man" is willing to turn a blind eye. *Feinberg v. C.I.R.*, 808 F.3d 813, 814 (10th Cir. 2015). Section 280E of the Internal Revenue Code provides:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business . . . consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law . . . .

As discussed, marijuana is still a controlled substance under the CSA, and the IRS has pursued numerous marijuana dispensaries in Colorado and elsewhere to recoup unlawful business deductions. *See, e.g.*, *Feinberg*, 808 F.3d at 814; *Olive v. C.I.R.*, 792 F.3d 1146, 1147 (9th Cir. 2015).

5

Case No. 1:16-cv-00297-RPM Document 23 Filed 05/02/17 USDC Colorado Page 6 of 20
Case 1:16-cv-00297-RPM Document 22-1 Filed 05/10/17 USDC Colorado Page 6 of 20
Appellate Case: 16-1281 Document: 01019803379 Date Filed: 05/02/2017 Page: 6

Green Solution's lawsuit seeks to enjoin the IRS from obtaining information related to its initial findings that Green Solution is dispensing marijuana in violation of the CSA and is thus ineligible for deductions under § 280E. But under the AIA, a litigant may not bring a "suit for the purpose of restraining the assessment or collection of any tax . . . in any court by any person, whether or not such person is the person against whom such tax was assessed." I.R.C. § 7421(a). The Supreme Court has long held the AIA is jurisdictional.[2] *See Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 5 (1962) (AIA's purpose "is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes"); *see also*

---

[2] We "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The issue of subject matter jurisdiction may not be forfeited or waived. *Id.* The Supreme Court has also instructed that "drive-by jurisdictional rulings . . . have no precedential effect." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 91 (1998). In *Hobby Lobby Stores, Inc. v. Sebelius*, a three-judge concurring opinion in our en banc panel would have found the AIA not jurisdictional, but a "waivable defense." 723 F.3d 1114, 1157–59 (10th Cir. 2013) (en banc) (Gorsuch, J., concurring), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014). But that position did not garner a majority of the en banc court, perhaps because we have held to the contrary that the AIA is jurisdictional. *See, e.g.*, *Sterling Consulting Corp. v. United States*, 245 F.3d 1161, 1167 (10th Cir. 2001); *Kirtley v. Bickerstaff*, 488 F.2d 768, 769 (10th Cir. 1973); *Williams v. Wiseman*, 333 F.2d 810, 811 (10th Cir. 1964). This position is consistent with the conclusion of every circuit to examine this question. *See, e.g.*, *Hotze v. Burwell*, 784 F.3d 984, 991 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1165 (2016); *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 87 (4th Cir. 2013); *RYO Mach., LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 470 (6th Cir. 2012); *Hansen v. Dep't of Treasury*, 528 F.3d 597, 601 (9th Cir. 2007). This combined weight of authority amounts to more than "drive-by jurisdictional rulings" and, without contrary en banc or Supreme Court authority, we cannot conclude the AIA is a "waivable defense" and not a jurisdictional bar.

Case No. 1:16-mc-00167-PAB Document 22-1 filed 05/10/17 USDC Colorado pg 7 of 20
Case 1:16-cv-00297-RPM Document 23 Filed 05/02/17 USDC Colorado Page 7 of 20
Appellate Case: 16-1281 Document: 01019803379 Date Filed: 05/02/2017 Page: 7

*Jefferson Cty. v. Acker*, 527 U.S. 423, 434–35 (1999). Thus, if the AIA applies, we may not reach the merits of Green Solution's claims.

Nor may Green Solution make an end-run around the AIA through its request for declaratory relief. The DJA allows a federal district court to grant declaratory relief "[i]n a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* . . ." 28 U.S.C. § 2201 (emphasis added). The DJA's tax exception is "coterminous" with the AIA's prohibition. *Cohen v. United States*, 650 F.3d 717, 730–31 (D.C. Cir. 2011) (en banc). In other words, "with respect to Federal taxes" means "restraining the assessment or collection of any tax." *Id.* at 727.

On appeal, Green Solution first contends that a suit to enjoin an investigation into whether a business trafficked in a controlled substance is a step removed from a suit to "restrain[] the assessment or collection of any tax" and is accordingly not precluded by the AIA.[3] Although Green Solution acknowledges that this Circuit in *Lowrie* held that the AIA bars "activities leading up to, and culminating in assessment," it contends the Supreme Court in *Direct Marketing Ass'n v. Brohl*, 135 S. Ct. 1124 (2015), implicitly overruled *Lowrie*.[4] Green Solution next argues the AIA does not preclude this suit, even

---

[3] And if the AIA bars this suit, the DJA claims are likewise barred because the two Acts are coterminous. *See Cohen v. United States*, 650 F.3d 717, 730–31 (D.C. Cir. 2011) (en banc).

[4] At oral argument, Green Solution conceded that the IRS's investigation is an "activity leading up to" the assessment, which under *Lowrie* is barred by the AIA. Because it is uncertain whether Green Solution intended also to concede its arguments that § 280E is a penalty, and the IRS is acting outside its authority, we address those arguments on the merits.

7

if *Lowrie* controls, because (1) the IRS is acting outside its authority by investigating whether Green Solution violated criminal law, and (2) section 280E is a penalty and not a "tax" subject to the AIA. We reject Green Solution's arguments and affirm the district court's dismissal of the action.

### A. *Whether* Direct Marketing *Implicitly Overruled* Lowrie

Green Solution asks us to depart from our holding in *Lowrie* that the AIA bars "activities leading up to, and culminating in, . . . assessment," *Lowrie*, 824 F.2d at 830, in favor of a holding that the AIA has no application unless the lawsuit restrains—meaning in some degree stops—the assessment or collection of a tax. But "we are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *Barnes v. United States*, 776 F.3d 1134, 1147 (10th Cir. 2015) (internal quotation marks omitted). Although the Supreme Court decision need not be "on all fours with our precedent," it must "contradict[] or invalidate[] our prior analysis" to be considered superseding authority. *United States v. Brooks*, 751 F.3d 1204, 1209–10 (10th Cir. 2014); *compare Barnes*, 776 F.3d at 1147 (refusing to overrule our prior precedent because the Supreme Court authority was not "so indisputable and pellucid . . . that it constitutes intervening (i.e., superseding) law that would permit us to hold (without en banc consideration)" to the contrary), *with Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1242 (10th Cir. 2016) (concluding intervening Supreme Court authority "undermine[d] the rationale of our decision . . . and warrant[ed] our retreat from its holding"). Green Solution contends that

8

Case No. 1:16-mc-00167-PAB   Document 22-1   filed 05/10/17   USDC Colorado   pg 9 of 20
Case 1:16-cv-02537-RPM   Document 23   Filed 05/02/17   USDC Colorado   Page 9 of 20
Appellate Case: 16-1281   Document: 01019803379   Date Filed: 05/02/2017   Page: 9

the Supreme Court has provided just such superseding authority in *Direct Marketing Ass'n v. Brohl*, 135 S. Ct. 1124 (2015).

To determine whether *Direct Marketing* has implicitly overruled *Lowrie* such that this panel is not horizontally bound by it, we begin with a discussion of our AIA precedent. We then examine the Supreme Court's decision in *Direct Marketing* to determine whether it has clearly undermined the rationale of our decision in *Lowrie*. Ultimately, we conclude Green Solution has failed to show that *Direct Marketing*'s reasoning so undermines *Lowrie* that this panel is not bound by that precedent. "Whether the Declaratory Judgment and Anti-Injunction Acts bar [a plaintiff's] claim is a question of law that we review de novo." *Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir. 2004).

1. **AIA and** *Lowrie*

Congress designed the AIA to enable "a minimum of preenforcement judicial interference" and "to require that the legal right to the disputed sums be determined in a suit for refund." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974) (internal quotation marks omitted); *Lowrie v. United States*, 824 F.2d 827, 830 (10th Cir. 1987) ("The intent behind the [AIA] is the protection of the government's need to assess and collect taxes as expeditiously as possible without preenforcement judicial interference and to require that disputed sums of taxes due be determined in suits for refund."); *see also Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1074 (D.C. Cir. 2015) ("If taxpayers could challenge the validity of a tax and forego payment during the pendency of the

9

Case No. 1:16-cv-00297-RPM Document 23 Filed 05/02/17 USDC Colorado pg 10 of 20
Case 1:16-cv-00297-RPM Document 22-1 filed 05/10/17 USDC Colorado Page 10 of 20
Appellate Case: 16-1281   Document: 01019803379   Date Filed: 05/02/2017   Page: 10

lawsuit, it would so interrupt the free flow of revenues as to jeopardize the Nation's fiscal stability." (internal quotation marks omitted)).

Accordingly, we held in *Lowrie* that the AIA applies "not only to the actual assessment or collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection." 824 F.2d at 830. Several other circuits agree. *See, e.g.*, *Cohen v. United States*, 650 F.3d 717, 727 (D.C. Cir. 2011) (en banc) ("[The AIA] requires a careful inquiry into the remedy sought, the statutory basis for that remedy, and *any implication the remedy may have* on assessment and collection." (emphasis added)); *Dickens v. United States*, 671 F.2d 969, 971 (6th Cir. 1982) ("A suit designed to prohibit the use of information to calculate an assessment is a suit designed for the purpose of restraining an assessment under the [AIA]." (internal quotation marks omitted)); *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir. 1981) ("[T]his ban against judicial interference is applicable not only to the assessment or collection itself, but is equally applicable to activities which are intended to or may culminate in the assessment." (internal quotation marks omitted)); *Koin v. Coyle*, 402 F.2d 468, 469 (7th Cir. 1968) ("True, the suit does not directly and expressly aim at the assessment. But it is directed expressly at the means to that end, and in our view is substantially aimed at restraining the assessment."); 14 Mertens Law of Federal Income Taxation § 49E:45 (2007) ("Administrative determinations and investigations necessary to an assessment are part of that process, for purposes of [the AIA].").

10

Case No. 1:16-mc-00167-PAB Document 22-1 filed 05/10/17 USDC Colorado pg 11 of 20
Case 1:16-cv-00257-RPM Document 23 Filed 05/02/17 USDC Colorado Page 11 of 20
Appellate Case: 16-1281     Document: 01019803379     Date Filed: 05/02/2017     Page: 11

Thus, as Green Solution concedes, the district court's decision dismissing the action for lack of subject matter jurisdiction was correct, if *Lowrie* still controls. We now consider that question.

## 2. *Direct Marketing* and the Tax Injunction Act

Green Solution contends the Supreme Court implicitly overruled the *Lowrie* line of cases in *Direct Marketing Ass'n v. Brohl*, 135 S. Ct. 1124 (2015). In *Direct Marketing*, a group of online retailers sued in federal court to enjoin the Colorado state taxing authority from requiring the retailers to, among other things, disclose certain information about their customers, including names, home addresses, and amounts spent. *Id.* at 1128. The district court concluded this requirement violated the Commerce Clause because it discriminated against and placed undue burdens on interstate commerce. *Id.* at 1128–29.

On appeal, the Tenth Circuit did not reach the merits of the retailers' claim. Instead, we concluded the Tax Injunction Act (TIA) deprived the district court of subject matter jurisdiction. *Direct Mktg. Ass'n v. Brohl*, 735 F.3d 904, 906 (10th Cir. 2013). The TIA protects against federal interference in state tax matters, but contains similar language to the AIA, providing: "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Using an argument similar to Green Solution's here, the retailers argued that Colorado's reporting requirement merely "related" to the use tax, which was not enough to bring their suit "under the umbrella of the TIA as a suit seeking to enjoin the collection of a state tax." *Direct Mktg.*, 735 F.3d at 912.

11

We focused on the word "restrain," defining it as "to limit, restrict, or hold back" the assessment, levy, or collection of taxes. *Id.* at 913; *see also id.* at 912 ("[T]he TIA bars more than suits that would enjoin tax collection. It also prohibits federal lawsuits that would '*restrain* the . . . collection' of a state tax."). Applying that definition to the facts, we concluded the "lawsuit, if successful, would limit, restrict, or hold back the state's chosen method of enforcing its tax laws and generating revenue" because it would "hamper Colorado's ability to raise revenue." *Id.* at 913–14. Because the lawsuit had the "*potential to restrain* tax collection," we held that it "trigger[ed] the jurisdictional bar" in the TIA. *Id.* at 913 (emphasis added).

The Supreme Court reversed. *Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124 (2015). In doing so, the Court referred to the AIA to guide its interpretation of the TIA, noting that "[a]lthough the TIA does not concern federal taxes, it was modeled on the Anti-Injunction Act (AIA), which does." *Id.* at 1129. The Court explained: "We assume that words used in both Acts are generally used in the same way, and we discern the meaning of the terms in the AIA by reference to the broader Tax Code." *Id.*

First, the Court defined the term "assessment" as "an official action taken based on information already reported to the taxing authority." *Id.* at 1130. While the Court explained that assessment "might also be understood more broadly to encompass the *process by which [an] amount is calculated*," it clarified that assessment is "the official recording of a taxpayer's liability, which occurs *after information relevant to the calculation* of that liability is reported to the taxing authority." *Id.* (emphases added). Accordingly, the Court explained that, historically, "assessment was understood as a step

12

Case No. 1:16-mc-00167-PAB   Document 22-1   filed 05/10/17   USDC Colorado   pg 13 of 20
Case 1:16-cv-00257-RPM   Document 23   Filed 05/02/17   USDC Colorado   Page 13 of 20
Appellate Case: 16-1281   Document: 01019803379   Date Filed: 05/02/2017   Page: 13

in the taxation process that occurred after, and was distinct from, the step of reporting information pertaining to tax liability." *Id.* After defining "assessment," the court then defined the words "levy" and "collection," and concluded "the three terms refer to discrete phases of the taxation process that do not include informational notices or private reports of information relevant to tax liability." *Id.* at 1129; *see also id.* ("[T]he Federal Tax Code has long treated information gathering as a phase of tax administration procedure that occurs before assessment, levy, or collection.").

The Supreme Court then rejected our definition of "restrain"—to include any suit that would "limit, restrict, or hold back"—as too broad. *Id.* at 1132. The Court did this for two reasons. First, because the word "restrain" acts on "assessment," "levy," and "collection," and "not on an all-encompassing term like 'taxation,'" the Court reasoned that:

> To give "restrain" the broad meaning selected by the Court of Appeals would be to defeat the precision of that list, as virtually any court action related to any phase of taxation might be said to "hold back" "collection." Such a broad construction would thus render "assessment and levy"—not to mention "enjoin and suspend"—mere surplusage, a result we try to avoid.

*Id.* The Supreme Court also rejected our definition of "restrain" because it would "lead[] the TIA to bar every suit" "that would have a negative impact on States' revenues." *Id.* at 1133. Second, the Court rejected our definition because the word "restrain" is paired with the words "enjoin" and "suspend," which are remedies that "restrict or stop official action to varying degrees, strongly suggesting that 'restrain' does the same." *Id.* at 1132.

In applying these definitions to the facts of the case, and noting that we favor "clear boundaries in the interpretation of jurisdictional statutes," the Supreme Court

13

Case No. 1:16-mc-00167-PAB   Document 22-1   filed 05/10/17   USDC Colorado   pg 14 of 20
Case 1:16-cv-02597-RPM   Document 23   Filed 05/02/17   USDC Colorado   Page 14 of 20
Appellate Case: 16-1281     Document: 01019803379     Date Filed: 05/02/2017     Page: 14

concluded the retailers' reporting requirements were not an act of "assessment," "levy," or "collection" because, although "[e]nforcement of the notice and reporting requirements may improve Colorado's ability to assess and ultimately collect its sales and use taxes from consumers," "the state still needs to take further action to assess the taxpayer's use-tax liability and to collect payment from him." *Id.* at 1131. The Court elaborated that "[t]he question—at least for negative injunctions—is whether relief to some degree *stops* 'assessment, levy or collection,' not whether it merely *inhibits* them." *Id.* at 1133 (emphases added).

Justice Ginsburg concurred, but emphasized that the retailers were "not challenging [their] own or anyone else's tax liability or tax collection responsibilities." *Id.* at 1136 (Ginsburg, J., concurring). The concurrence explained that "[a] different question would be posed . . . by a suit to enjoin reporting obligations imposed on a taxpayer . . . in lieu of a direct challenge to an 'assessment.'" *Id.* And Justice Ginsburg noted the "Court does not reach today the question whether the claims in such a suit, i.e., claims suitable for a refund action, are barred by the [TIA]." *Id.*

### 3. Application

The question we must answer today is whether *Direct Marketing* contradicts, invalidates, or undermines our reasoning in *Lowrie*, such that this panel is no longer bound by horizontal stare decisis. *See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1242 (10th Cir. 2016); *Barnes v. United States*, 776 F.3d 1134, 1147 (10th Cir. 2015); *United States v. Brooks*, 751 F.3d 1204,

14

Case No. 1:16-mc-00167-PAB   Document 22-1   filed 05/10/17   USDC Colorado   pg 15 of 20
Case 1:16-cv-00297-RPM   Document 23   Filed 05/02/17   USDC Colorado   Page 15 of 20
Appellate Case: 16-1281   Document: 01019803379   Date Filed: 05/02/2017   Page: 15

1209–10 (10th Cir. 2014). We conclude that while *Direct Marketing* calls our holding in *Lowrie* into question, that question cannot be answered by this panel acting alone.

The differences between the two opinions are significant. *Direct Marketing* involved the TIA, while *Lowrie* considered the AIA. The TIA and the AIA are different statutes located in different titles of the United States Code. *See* I.R.C. § 7421 (AIA); 28 U.S.C. § 1341 (TIA). Although the TIA was modeled on the AIA, the Acts serve different purposes. The TIA is designed to protect against federal interference in state tax matters, while the AIA serves to protect the IRS's ability to collect taxes without interference, requiring taxpayers in most cases to challenge the taxes in a refund suit.[5]

And although the Supreme Court in *Direct Marketing* "assume[d] that words used in both Acts are generally used in the same way," 135 S. Ct. at 1129, the Acts contain different language. The AIA provides that, subject to certain exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." I.R.C. § 7421(a). The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The Supreme Court concluded the word "restrain" in the TIA refers to suits that to some degree *stop*, not merely *inhibit*, the assessment, levy, or collection of taxes. It came

---

[5] I.R.C. § 6213(a) is an exception to the refund requirement, allowing a taxpayer to petition the Tax Court prepayment for redetermination within ninety days of receiving a notice of deficiency.

15

Case No. 1:16-mc-00167-PAB   Document 22-1   filed 05/10/17   USDC Colorado   pg 16 of 20
Case 1:16-cv-00297-RPM   Document 23   Filed 05/02/17   USDC Colorado   Page 16 of 20
Appellate Case: 16-1281   Document: 01019803379   Date Filed: 05/02/2017   Page: 16

to this conclusion for two reasons, the first of which supports the argument that *Direct Marketing* implicitly overruled *Lowrie*, the second of which does not.

First, the Supreme Court reasoned that the word "restrain" in the TIA "acts on a carefully selected list of technical terms—'assessment, levy, collection'—not on an all-encompassing term, like 'taxation.'" 135 S. Ct. at 1132. The Court explained that "*any* court action related to any phase of taxation might be said to 'hold back' 'collection,'" rendering "assessment and levy" a "mere surplusage." *Id.* (emphasis added). Like the TIA, in the AIA the word "restrain" acts on the words "assessment" and "collection."

*Lowrie* construed the AIA to preclude suits that challenge "activities leading up to" an assessment or collection, which could potentially include suits only tangentially related to assessment or collection, and that thereby merely inhibit assessment, rather than stop it to some degree. *See id.* (rejecting our definition of "restrain" as "to hold back" because "virtually any court action related to any phase of taxation might be said to hold back collection" (internal quotation marks omitted)). Green Solution argues that because the AIA, like the TIA, uses the words "assessment" and "collection" rather than "taxation," we should reject *Lowrie*'s inclusion of "activities leading up to, and culminating in, such assessment and collection" and instead require that the lawsuit would in some degree stop an assessment or collection.

But the Supreme Court also provided a second rationale for interpreting "restrain" in the TIA to mean suits that to some degree *stop*, rather than merely *inhibit*, the assessment, levy, or collection of taxes. The Court reasoned that "'[r]estrain,' standing alone, can have several meanings," so it looked "to the company 'restrain' keeps" in the

16

Case No. 1:16-cv-00297-RPM Document 23 Filed 05/02/17 USDC Colorado pg 17 of 20
Case 1:16-mc-00167-RAB Document 22-1 filed 05/10/17 USDC Colorado pg 17 of 20
Appellate Case: 16-1281 Document: 01019803379 Date Filed: 05/02/2017 Page: 17

TIA. *Id*. The Court explained that "restrain" keeps company with "enjoin" and "suspend," both "terms of art in equity . . . that restrict or stop official action to varying degrees, strongly suggesting that 'restrain' does the same." *Id.*

Unlike in the TIA, "restrain" in the AIA stands alone. Recall that the AIA states: "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." I.R.C. § 7421(a). To the extent it keeps company, it does so with the phrase "*for the purpose of* restraining the assessment or collection." Thus, unlike in the TIA, the injunctive relief barred by the AIA need not *actually* restrain an assessment or collection, it need only have restraint of those functions as its purpose. This language comports with our reasoning in *Lowrie*, that the AIA applies "not only to the *actual* assessment and collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection. 824 F.2d at 830 (emphasis added). That is, suits barring "activities leading up to[] and culminating in" assessment may be barred if they are filed "for the purpose of restraining" an assessment.

In addition, Justice Ginsburg's concurrence in *Direct Marketing* would limit that case to its unique facts.[6] It noted that the retailers were "not challenging [their] own or anyone else's tax liability or tax collection responsibilities," and explained that "[a] different question would be posed . . . by a suit to enjoin reporting obligations imposed

---

[6] Justice Breyer and Justice Sotomayor joined in the relevant portion of Justice Ginsburg's concurrence. *Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1135–36 (2015) (Ginsburg, J., concurring).

17

Case No. 1:16-cv-00297-RPM Document 23 Filed 05/10/17 USDC Colorado pg 18 of 20
Case 1:16-cv-00297-RPM Document 22-1 filed 05/02/17 USDC Colorado pg 18 of 20
Appellate Case: 16-1281 Document: 01019803379 Date Filed: 05/02/2017 Page: 18

on a taxpayer . . . in lieu of a direct challenge to an 'assessment.'" *Direct Mktg.*, 135 S. Ct. at 1136 (Ginsburg, J., concurring). Justice Ginsburg explained, the "Court does not reach today the question whether the claims in such a suit, i.e., claims suitable for a refund action, are barred by the [TIA]." *Id.* Unlike Green Solution, the retailers in *Direct Marketing* could not seek relief in a state refund action because the inquiries to the retailers were aimed at increasing the tax liability of their customers, not themselves. Thus, it is uncertain whether a majority of the Supreme Court would hold the TIA bars a federal action seeking to enjoin the state taxing authority from enforcing reporting obligations against the taxpayer. And it is therefore even more unsettled how the Court would assess a similar action to enjoin federal taxing authorities under the distinct language of the AIA. When three concurring Justices say that *Direct Marketing* did not reach the situation now before us, and no Justice disputed that statement, we can hardly say that *Direct Marketing* so undermined the authority of *Lowrie* in this context that we must retreat from its holding.

### B. Additional Arguments

Green Solution asserts that even if *Lowrie* is still good law, the AIA does not preclude this suit. First, Green Solution contends the IRS was acting outside its authority in investigating whether Green Solution trafficked in a controlled substance, which it claims is a criminal investigation properly carried out by the United States Attorney.[7]

---

[7] After oral argument, Green Solution submitted supplemental authority pursuant to Federal Rule of Appellate Procedure 28(j), raising two new arguments with respect to the IRS's authority: (1) Congress did not provide the IRS with standards to determine whether to deny deductions under § 280E, and (2) the IRS failed to go through a formal

18

Case No. 1:16-mc-00167-RAB Document 22-1 filed 05/10/17 USDC Colorado pg 19 of 20
Case 1:16-cv-00297-RPM Document 23 Filed 05/02/17 USDC Colorado Page 19 of 20
Appellate Case: 16-1281 Document: 01019803379 Date Filed: 05/02/2017 Page: 19

According to Green Solution, "While § 280E is within the Tax Code, the CSA is not. Thus, a determination of whether a taxpayer violated the CSA is not within the authority of the IRS." Green Solution claims it is not seeking to enjoin the IRS from enforcing § 280E, which it acknowledges would be precluded by the AIA, but that it seeks only to enjoin the IRS's investigation of alleged federal drug law violations, which Green Solution claims falls outside the protection of the AIA.

But § 280E has no requirement that the Department of Justice conduct a criminal investigation or obtain a conviction before § 280E applies. *See Alpenglow Botanicals, LLC v. United States*, No. 16-cv-00258-RM-CBS, 2016 WL 7856477, at *4 (D. Colo. Dec. 1, 2016) (unpublished) ("If Congress had wanted such an investigation to be carried out or conviction to be obtained, then it could easily have placed such language in § 280E."). Instead, the IRS's obligation to determine whether and when to deny deductions under § 280E, falls squarely within its authority under the Tax Code. *See* I.R.C. § 6201(a) (authorizing and requiring the IRS "to make the inquiries, determinations, and assessments of all taxes . . . imposed by this title"); I.R.C. § 7602(a) (authorizing the IRS to "examine any books, papers, records, or other data which may be relevant or material to" "determining the liability of any person for any internal revenue tax"); *see also United States v. Clarke*, 134 S. Ct. 2361, 2364 (2014) (holding the IRS

---

rulemaking process before enforcing § 280E. But Green Solution never raised these arguments in the district court or in its appellate briefs, and "it is well established that we will not consider issues raised for the first time in a Rule 28(j) letter." *Flores-Molina v. Sessions*, 850 F.3d 1150, 1172 n.16 (10th Cir. 2017) (internal quotation marks omitted).

19

Case No. 1:16-mc-00167-PAB   Document 22-1   filed 05/10/17   USDC Colorado   pg 20 of 20
Case 1:16-cv-02597-RPM   Document 23   Filed 05/02/17   USDC Colorado   Page 20 of 20
Appellate Case: 16-1281   Document: 01019803379   Date Filed: 05/02/2017   Page: 20

"has broad statutory authority to summon a taxpayer to produce documents or give testimony relevant to determining tax liability"). Thus, the AIA is implicated here.[8]

Second, Green Solution argues that § 280E is a penalty, not a tax subject to the AIA. Again we disagree. A "penalty" is defined as "an exaction imposed by statute as punishment for an unlawful act." *United States v. La Franca*, 282 U.S. 568, 572 (1931). The disallowance of a deduction is not an exaction imposed as punishment. "Deductions . . . are not a matter of right. Neither do they turn upon equitable considerations. They are a matter of legislative grace." *See United States v. Akin*, 248 F.2d 742, 743 (10th Cir. 1957). Moreover, Green Solution does not cite a single case that holds the disallowance of a deduction constitutes a "penalty" and falls outside the AIA's reach. *Bob Jones University v. Simon*, 416 U.S. 725, 738 (1974), and *Alexander v. Americans United, Inc.*, 416 U.S. 752, 760–61 (1974), both involved the disallowance of deductions for charitable contributions, and neither was held to be a penalty. Section 280E is not a penalty.

## IV.   CONCLUSION

The Supreme Court's decision in *Direct Marketing Ass'n v. Brohl* did not clearly undermine our reasoning in *Lowrie*. Thus, because the IRS's investigation of Green Solution's business records is an "activity leading up to" an assessment, we conclude Green Solution's lawsuit was filed for the purpose of restraining any such assessment and is therefore barred by the AIA and DJA. We affirm.

---

[8] To the extent Green Solution argues the IRS exceeded its authority under the Internal Revenue Code, we lack subject matter jurisdiction to consider the merits of the argument. We decide here only that the IRS's efforts to assess taxes based on the application of § 280E fall within the scope of the AIA.