**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**October 20, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

| | |
|---|---|
| ERIC D. SPEIDELL, | |
|      Petitioner - Appellant, | |
| v. | No. 19-1214 |
| UNITED STATES OF AMERICA, through its agency the Internal Revenue Service, | |
|      Respondent - Appellee. | |
| _____ | |
| THE GREEN SOLUTION RETAIL, INC., a Colorado corporation; GREEN SOLUTION, LLC, a Colorado limited liability company; INFUZIONZ, LLC, a Colorado limited liability company; GREEN EARTH WELLNESS, INC., a dissolved Colorado corporation, | |
|      Plaintiffs - Appellants, | |
| v. | No. 19-1215 |
| UNITED STATES OF AMERICA, through its agency the Internal Revenue Service, | |
|      Defendant - Appellee. | |
| _____ | |
| GREEN SOLUTION, LLC, a Colorado limited liability company; GREEN EARTH WELLNESS, INC., a dissolved Colorado limited liability Company; TGS | |

MANAGEMENT, LLC, a Colorado
limited liability company; S-TYPE
ARMORED, LLC, a Colorado limited
liability company; IVXX INFUZIONZ,
LLC, a Colorado limited liability company,

      Petitioners - Appellants,

v.                                                                                No. 19-1216

UNITED STATES OF AMERICA,
through its agency the Internal Revenue
Service,

      Respondent - Appellee.

_____

MEDICINAL WELLNESS CENTER,
LLC, a Colorado limited liability company;
MEDICINAL OASIS, LLC, a Colorado
limited liability company; MICHAEL
ARAGON, an individual; JUDY
ARAGON, an individual; STEVEN
HICKOX, an individual,

      Petitioners - Appellants,

v.                                                                                Nos. 19-1217 & 19-1218

UNITED STATES OF AMERICA,
through its agency the Internal Revenue
Service,

      Respondent - Appellee.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. Nos. 1:16-MC-00162-PAB, 1:16-MC-00137-PAB, 1:16-MC-00167-PAB,
1:18-MC-00031-PAB, and 1:17-MC-00170-PAB)**

_____

2

James D. Thorburn (Richard Walker, with him on the briefs), Thorburn Walker LLC, Greenwood Village, Colorado, appearing for Appellants.

Nathaniel S. Pollock, Attorney, United States Department of Justice, Tax Division, Washington DC (Richard E. Zuckerman, Principal Deputy Assistant Attorney General, and Travis A. Greaves, Deputy Assistant Attorney General, United States Department of Justice, Washington, DC; Gilbert S. Rothenberg and Michael J. Haungs, Attorneys, United States Department of Justice, Tax Division, Washington, DC; and Jason R. Dunn, United States Attorney, Office of the United States Attorney for the District of Colorado, Denver, Colorado, with him on the briefs), appearing for Appellee.

———————————————————

Before **BRISCOE**, **MORITZ**, and **CARSON**, Circuit Judges.

———————————————————

**BRISCOE**, Circuit Judge.

———————————————————

This case examines the power of the Appellee, the Internal Revenue Service ("IRS" or "Agency"), to enforce a provision in the tax code disallowing deductions for business activities concerning controlled substances which are illegal under federal law. That provision states as follows:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

26 U.S.C. § 280E. The Appellants are affiliated with marijuana dispensaries in Colorado, where that line of business is legal under state law. This discrepancy between federal and state law gives rise to all of the issues in this case.

The Appellants object to the IRS's attempts to collect and audit information about their marijuana-related business practices. The Appellants argue that (1) the

3

IRS investigation is quasi-criminal, exceeds the Agency's authority, and is being

conducted for an illegitimate purpose; (2) even if the investigation had a legitimate

purpose, the information sought is irrelevant; and (3) the investigation is in bad faith

and constitutes an abuse of process because (a) the IRS may share the information

collected with federal law enforcement agents, (b) the IRS summonses are overly

broad and require the creation of new reports, (c) the dispensaries have a reasonable

expectation of privacy in the data they tender to state regulatory authorities, and

(d) those state authorities cannot provide the requested information without violating

Colorado law.  The Appellants further contend that the district court applied the

wrong standard of review when it denied motions to quash and granted motions to

enforce the summonses.

These arguments are familiar to us.  Over the last several years, multiple

Colorado marijuana dispensaries have challenged the IRS's ability to investigate and

impose tax consequences upon them.  Those dispensaries have been represented by

the same attorneys that are representing the dispensaries fighting the summonses in

this case.  The dispensaries have lost every time.  *See Standing Akimbo, LLC v.*

*United States*, 955 F.3d 1146, 1150–69 (10th Cir. 2020); *High Desert Relief, Inc. v.*

*United States*, 917 F.3d 1170, 1174–98 (10th Cir. 2019); *Feinberg v. Comm'r of*

*Internal Revenue*, 916 F.3d 1330, 1331–38 (10th Cir. 2019); *Alpenglow Botanicals,*

*LLC v. United States*, 894 F.3d 1187, 1192–1206 (10th Cir. 2018); *Green Sol. Retail,*

*Inc. v. United States*, 855 F.3d 1111, 1112–21 (10th Cir. 2017).  The same result is

warranted here.  We affirm the district court's rulings in favor of the IRS.  Because

*Standing Akimbo* summarizes much of the relevant case law and is directly on point for almost every argument raised by the Appellants, this opinion liberally quotes that decision from earlier this year.

## I.  Background

This case involves two sets of Appellants.  The first set encompasses Green Earth Wellness, Inc.; Green Solution, LLC; Infuzionz, LLC; IVXX Infuzionz, LLC; S-Type Armored, LLC; TGS Management, LLC; The Green Solution Retail, Inc.; and Eric Speidell (collectively "the Green Solution parties").  Speidell is believed to be (or believed to have been) an owner of some of the Green Solution entities.  The Green Solution parties "are engaged in the retail sale of marijuana and marijuana-related products," and advertise themselves as "Colorado's #1 Marijuana Dispensary."  Aplt. App., Vol. 1 at 71; *id.*, Vol. 2 at 60.

Pursuant to § 280E, the IRS is auditing the Green Solution parties' tax returns for 2013 and 2014.  Because some of the Green Solution businesses are pass-through entities for tax purposes, the IRS's investigation includes Speidell's individual tax returns.  The IRS requested information and sent summonses to the Green Solution parties, but only received partial responses that were insufficient "to substantiate the figures shown on their tax returns."  *Id.*, Vol. 1 at 72–73; *id.*, Vol. 2 at 60, 81–84.  Among other things, the Green Solution parties did not produce information reported to Colorado's Marijuana Enforcement Division ("MED"), including information from MED's Marijuana Enforcement Tracking Reporting and Compliance ("METRC") system.  The IRS contends that this information "is particularly valuable during an

audit," because "[i]n Colorado, marijuana growers and dispensaries must account for all marijuana plants and products" through METRC, thus potentially confirming "whether a marijuana business properly reported its gross receipts and allowed deductions for cost of goods sold." *Id.*, Vol. 2 at 61; *id.*, Vol. 9 at 184. After unsuccessfully seeking such information from the Green Solution parties, the IRS served summonses on MED itself. The IRS also served summonses on the Green Solution parties' financial institutions.

The Green Solution parties petitioned to quash the IRS summonses. The IRS moved to dismiss the petitions to quash and also moved to enforce the summonses. In a series of orders, the district court denied the Green Solution parties' motions to quash and granted the IRS's motions to enforce. Among other things, the district court held that (1) the IRS had a legitimate purpose in issuing the summonses because the Agency has the authority to determine whether a taxpayer is trafficking in a controlled substance; (2) the information sought was not already in the IRS's possession and was relevant to determining the Green Solution parties' tax obligations; (3) the IRS followed the required administrative steps; and (4) the Green Solution parties did not show an abuse of process or bad faith because there was no proof the IRS was seeking to place them in criminal jeopardy. Several of the Green Solution parties filed a motion to alter or amend, which the district court denied as well.

The district court denied Speidell's individual motion to quash on different grounds. The district court observed that the IRS issued summonses regarding

6

Speidell to MED on June 7, 2016, but Speidell did not file his petition to quash until July 29, 2016, missing the 20-day deadline set by 26 U.S.C. § 7609(b)(2)(A). The district court determined that Speidell did not contradict the IRS agent's declaration demonstrating service of the summonses. The district court thus dismissed Speidell's petition to quash for lack of subject matter jurisdiction. The district court went on to say that it was granting the IRS's motion to dismiss the petition and enforcing the summonses to MED.

The second set of Appellants encompasses Medicinal Oasis, LLC; Medicinal Wellness Center, LLC; Judy Aragon; Michael Aragon; and Steven Hickox (collectively "the Medicinal Wellness parties"). The Aragons and Hickox are believed to be (or believed to have been) owners of some of the Medicinal Wellness entities. The Medicinal Wellness parties include a marijuana retail dispensary, "marijuana grow facilities," and a cannabis "superstore" in Colorado. *Id.*, Vol. 6 at 69; *id.*, Vol. 9 at 182. The Medicinal Wellness parties advertise themselves as "full service" with the "largest selection of cannabis in the world!" *Id.*, Vol. 6 at 69; *id.*, Vol. 9 at 182.

Pursuant to § 280E, the IRS is auditing the Medicinal Wellness parties' tax returns from 2014 through 2016. Because some of the Medicinal Wellness businesses are pass-through entities, the IRS's investigation includes the personal tax returns of the Aragons and Hickox. The IRS sent Information Document Requests ("IDRs") or summonses to the Medicinal Wellness parties, but only received partial responses that were "not . . . sufficient . . . to substantiate the figures shown on their

7

tax returns." *Id.*, Vol. 6 at 70–71; *id.*, Vol. 8 at 42–60; *id.*, Vol. 9 at 183–84.  The Medicinal Wellness parties say they requested immunity from prosecution before providing further information, but the IRS declined the request after consulting with the United States Attorney's Office.  The Medicinal Wellness parties did not produce information reported to MED, including information from MED's METRC system. The IRS again contends that this information "is particularly valuable during an audit."  *Id.*, Vol. 2 at 61; *id.*, Vol. 6 at 71; *id.*, Vol. 9 at 184.  After unsuccessfully seeking such information from the Medicinal Solution parties, the IRS served summonses on MED itself.

The Medicinal Wellness parties petitioned to quash the IRS summonses.  The IRS moved to dismiss the petitions to quash and to enforce the summonses.  In a pair of orders, the district court denied the Medicinal Wellness parties' motions to quash and granted the IRS's motions to enforce.  Among other things, the district court held that (1) the IRS had a legitimate purpose in issuing the summonses because there was no pending criminal investigation and no right among the Medicinal Wellness parties to demand immunity or invoke the privilege against self-incrimination; (2) the information sought was not already in the IRS's possession and was relevant to determining the Medicinal Wellness parties' tax obligations; (3) the IRS followed the required administrative steps; and (4) the Medicinal Wellness parties did not show an abuse of process or bad faith because the summonses had a valid purpose, were not fishing expeditions seeking materials outside MED's control, did not run afoul of any

Fourth Amendment right to privacy, and did not require MED to violate Colorado law.

After appeals had been filed in the various Green Solution and Medicinal Wellness cases, the parties requested a consolidated briefing schedule.  This court obliged, directing the parties to file consolidated opening, response, and reply briefs. *Sua sponte*, the court later directed the parties to file supplemental briefs "addressing whether this court's opinion in *Standing Akimbo* is determinative of the outcomes of these consolidated appeals."  8/4/20 Tenth Circuit Order at 3.

## II. Nearly all of the Appellants' arguments are directly foreclosed by circuit precedent

The United States Supreme Court's decision in *United States v. Powell*, 379 U.S. 48 (1964), provides the framework for our analysis.  In general, the IRS has "broad latitude" to issue summonses for the purpose of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax," or "collecting any such liability."  *Standing Akimbo*, 955 F.3d at 1154 (quoting *United States v. Clarke*, 573 U.S. 248, 250 (2014)) (internal quotation marks omitted).  Still, the IRS "must first show that it has not made a referral of the taxpayer's case" to the Department of Justice ("DOJ") for criminal prosecution.  *Id.* (citations omitted).  Thereafter, the IRS must demonstrate good faith in issuing the summonses, which means "establishing what have become known as the *Powell* factors."  *Id.* at 1154–55 (citations omitted).  "*Powell* requires that the IRS establish (1) 'that the investigation will be conducted pursuant to a

legitimate purpose,' (2) 'that the inquiry may be relevant to the purpose,' (3) 'that the

information sought is not already within the [IRS's] possession,' and (4) 'that the

administrative steps required by the [Internal Revenue] Code have been followed.'"

*Id.* at 1155 (quoting *Powell*, 379 U.S. at 57–58) (brackets in original).

We have held that the IRS's burden in connection with these factors is

"slight," because statutes like 26 U.S.C. § 7602(a) "must be read broadly to ensure

that the enforcement powers of the IRS are not unduly restricted."  *Id.* (quoting

*United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985)).

"The IRS generally meets this burden with an affidavit of the agent who issued the

summons."  *Id.*  Once the IRS provides such an affidavit, a "heavy" burden falls on

the taxpayer "to factually refute the *Powell* showing or factually support an

affirmative defense."  *Id.*  "Because the burden of showing an abuse of the [c]ourt's

process is on the taxpayer," he or she "must make a substantial preliminary showing

before even limited discovery need be ordered."  *Id.* (citations and internal quotation

marks omitted).  We review the denial of a petition to quash for an abuse of

discretion, but we review an order granting a motion to dismiss such a petition and

enforcing a summons—as well as any alleged errors of law—de novo.  *Id.*; *see also*

*id.* at 1155 n.4 (noting that a district court's decision to enforce a summons may be

reviewed for clear error with respect to contested findings of fact).

The Appellants argue that the rules announced in our 1985 *Balanced Financial*

*Management* decision, which rules impose a "slight" burden on the IRS and a

"heavy" burden on the taxpayer, are incompatible with normal summary judgment

standards and the Supreme Court's 2014 ruling in *Clarke*.  Although *Standing Akimbo* does not directly address this issue, the panel in that case was clearly aware of *Clarke* and continued to apply *Balanced Financial Management* principles.  *See Standing Akimbo*, 955 F.3d at 1154–55, 1157, 1160–61, 1163, 1166 (citing both *Clarke* and *Balanced Financial Management*).  *High Desert* embraces a similar analysis.  *See* 917 F.3d at 1181–84, 1187, 1191, 1194 (same).  In any event, we need not decide whether this point in *Standing Akimbo* and *High Desert* is dictum or a holding.  As discussed below, even if we eschew descriptions like "slight" and "heavy" and apply traditional summary judgment standards, the Appellants simply have not submitted proof sufficient to create a genuine dispute of material fact.  The Appellants thus fall short even if we assume *arguendo* that *Balanced Financial Management* has been displaced by Federal Rule of Civil Procedure 56 and *Clarke*.

It bears emphasis, however, that *Clarke* does not clearly overrule *Balanced Financial Management*.  *Clarke* indeed indicates that direct evidence of bad faith "will rarely if ever be available" at an early stage, that "circumstantial evidence can suffice," and that a taxpayer need not provide a "fleshed out case" to warrant further inquiry.  573 U.S. at 254.  But *Clarke*'s core holding is that "a bare allegation of improper purpose does not entitle a taxpayer to examine IRS officials.  Rather, the taxpayer has a right to conduct that examination when he points to *specific facts or circumstances plausibly raising an inference* of bad faith."  *Id.* at 249 (emphasis added); *see also id.* at 254 ("Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge.").  That is at

11

least directionally consistent with *Balanced Financial Management*, and the Appellants have not provided the "specific facts or circumstances" required by *Clarke*. There are other statements in *Clarke* that are consistent with *Balanced Financial Management*. *See* 573 U.S. at 250 (stating that the IRS has "broad latitude" to issue summonses); *id.* at 250, 254 (stating that the IRS usually makes the required showing under *Powell* by filing "an affidavit from the responsible investigating agent"); *id.* at 254 (stating that "summons enforcement proceedings are to be summary in nature") (citation and internal quotation marks omitted); *id.* (stating that "we have rejected rules that would thwart and defeat the [IRS's] appropriate investigatory powers") (citation and internal quotation marks omitted).

Because any tension created by *Clarke* is indirect, we must follow our circuit precedent. "[O]ne panel of the court cannot overrule circuit precedent" absent "an intervening Supreme Court or en banc decision justifying such action." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018) (citations omitted). A Supreme Court ruling is "intervening" if it "is contrary to or invalidates our previous analysis." *Id.* (citation omitted). And to reiterate, *Clarke* does not obviously contradict or invalidate *Balanced Financial Management*.

## A. The rules governing summary judgment apply, but the Appellants have not demonstrated a prejudicial error

The Appellants contend that the Rule 56 standards governing motions for summary judgment apply, rather than the Rule 12 standards governing motions to dismiss. That is correct. *See Standing Akimbo*, 955 F.3d at 1155 ("In determining

whether the IRS met *Powell*'s requirements, we must consider something outside the pleadings. . . . Because we are considering [an IRS agent's] declaration, the IRS's motion to dismiss must be treated as one for summary judgment under Rule 56.") (citation and internal quotation marks omitted).  As in *Standing Akimbo*, though, the Appellants have not shown that any application of Rule 12 by the district court affected the outcome of the case:

> The district court correctly applied the *Powell* framework but erred by considering [an IRS agent's] declaration without converting the motion to dismiss to a motion for summary judgment.  But we will not reverse or remand on this error, because "we may affirm on any basis that the record adequately supports."  And the record supports the government's position under the summary-judgment standard. . . . Notably, our traditional summary-judgment standard of review precludes the Taxpayers from resting on conclusory statements because such statements do not suffice to create a genuine issue of material fact.

*Id.* at 1155–56 (quoting *High Desert*, 917 F.3d at 1181) (other citations and internal quotation marks omitted).  Put another way, the Appellants in this case rely on the same types of evidence (and the same types of attacks on the IRS's evidence) that they proffered in *Standing Akimbo*.  *See, e.g.,* Aplt. Br. at 25 (recognizing that one of the IRS agent's declarations in this case "is nearly identical to the Declaration he submitted in *Standing Akimbo*"); Aple. Suppl. Br. at 5 ("The affidavits filed by the IRS agents who issued the summonses here on appeal are materially similar to the affidavit that this Court determined to be sufficient to meet the *Powell* standard in *Standing Akimbo*.").  That evidence and the attacks on the IRS's evidence did not create a genuine dispute of material fact in *Standing Akimbo*, and they create no such dispute here.

For example, as in *Standing Akimbo*, each Appellant repeatedly claims that the declarations tendered by the IRS are too "conclusory" to justify summary judgment. Aplt. Br. at 25; Aplt. Rep. Br. at 16–17; Aplt. Suppl. Br. at 5.  Under Rule 56, they are not.  The agents have first-hand knowledge of the matters at issue, and their testimony consists of more than mere legal conclusions.  "So long as an affidavit is based upon personal knowledge and set[s] forth facts that would be admissible in evidence, it is legally competent to oppose summary judgment, irrespective of its self-serving nature."  *Sanchez v. Vilsack*, 695 F.3d 1174, 1180 n.4 (10th Cir. 2012) (brackets in original, citations and internal quotation marks omitted); *see also Greer v. City of Wichita, Kan.*, 943 F.3d 1320, 1325 (10th Cir. 2019) (agreeing that self-serving testimony satisfying these criteria is useable on summary judgment, because "virtually any party's testimony can be considered 'self-serving'").

In their supplemental brief, the Appellants assert that "the *Standing Akimbo* Court determined that the Taxpayers waived all arguments as to standard of review." Aplt. Suppl. Br. at 3.  That is true to a degree, but incomplete.  We did state in *Standing Akimbo* that the Taxpayers "waived appellate review" as to the standard of review "by failing to raise it in their objections to the magistrate judge's recommendation."  955 F.3d at 1156 n.5.  Yet that footnoted point essentially was made in the alternative.  In the text of the *Standing Akimbo* opinion, we addressed on the merits—and at some length—the appropriate standard of review, making clear that "we will apply our traditional Rule 56 summary-judgment standard in assessing this case."  *Id.* at 1156.

**B. There is no genuine dispute of material fact regarding the *Powell* factors**

**1. The IRS has not made referrals to the DOJ for prosecution**

The Appellants have not pointed to competent evidence contradicting the IRS's denial that the cases at issue have been referred to the DOJ for prosecution. Declarations submitted by IRS agents state that no such referral is in effect. Aplt. App., Vol. 1 at 74; *id.*, Vol. 2 at 62; *id.*, Vol. 6 at 74; *id.*, Vol. 9 at 187.  As noted in *Standing Akimbo*, "an 'affidavit of the agent who issued the summons and who is seeking enforcement' is sufficient to make '[t]he requisite showing.'"  955 F.3d at 1156 (quoting *High Desert*, 917 F.3d at 1184).  That is particularly true when, as in this case, there is no proof to the contrary.

**2. The IRS is conducting the investigations for a legitimate purpose**

Nor have the Appellants pointed to evidence contradicting the IRS's explanation of the purpose of the audits of the Green Solution and Medicinal Wellness parties.  Among other things, the declarations from IRS agents state that the Agency is investigating the Appellants' federal tax liabilities, "verifying the accounting records," "reconstructing income," "substantiating the tax returns at issue," and confirming business relationships.  Aplt. App., Vol. 1 at 71–73; *id.*, Vol. 2 at 58–61; *id.*, Vol. 6 at 68–71; *id.*, Vol. 9 at 182–84.  Rather than challenging these factual assertions, the Appellants maintain that (1) the IRS lacks authority to decide whether the Appellants' conduct is prohibited by the Controlled Substances Act ("CSA"); and (2) the IRS's powers do not supersede or preempt Colorado law. Neither argument has legs.

We have rejected the Appellants' "lack of authority" argument several times, most recently in *Standing Akimbo*. We said:

> [T]he Taxpayers argue that the IRS acted with an illegitimate purpose, namely, investigating federal drug crimes. We have already rejected this argument. In 2017, we observed that "the IRS's obligation to determine whether and when to deny deductions under § 280E[ ] falls squarely within its authority under the Tax Code." *Green Sol. Retail*, 855 F.3d at 1121[.] The next year we held that "it is within the IRS's statutory authority to determine, as a matter of civil tax law, whether taxpayers have trafficked in controlled substances." *Alpenglow*[, 894 F.3d at 1187]. Most recently in *High Desert*, we relied on *Green Solution* and *Alpenglow* to hold that the IRS has statutory authority to "mak[e] a determination that Congress expressly asked it to make—even if that determination requires the IRS to ascertain whether the taxpayer is engaged in conduct that could subject him or her to criminal liability under the CSA." *High Desert*, 917 F.3d at 1187. So, even if the IRS had in fact issued the summonses to investigate federal drug crimes (and the Taxpayers have furnished no evidence of that), the IRS could still do so as part of determining § 280E's applicability.

955 F.3d at 1157 (various brackets added, further citations omitted).

We have rejected the Appellants' "preemption" argument as well. Once more, we explained in detail in *Standing Akimbo* why the argument is unavailing:

> The CSA does not have to preempt Colorado law for § 280E to apply. Section 280E applies when a business's activities "consist[] of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law *or* the law of any State in which such trade or business is conducted." 26 U.S.C. § 280E (emphasis added). Congress's use of "or" extends the statute to situations in which federal law prohibits the conduct *even if* state law allows it. Further, the CSA reigns supreme. "[S]tate legalization of marijuana cannot overcome federal law." *Feinberg*[, 916 F.3d at 1338 n.3]. So, despite legally operating under Colorado law, "the Taxpayers are subject to greater federal tax liability" because of their federally unlawful activities, and any "remedy [for this] must come from Congressional change to § 280E or 21 U.S.C. § 812(c) (Schedule I) rather than from the courts." [*Id.*]

16

955 F.3d at 1158 (various brackets added, emphasis in original, further citations omitted); *see also id.* at 1168 n.21 ("The Supremacy Clause enables federal law to preempt state law when it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  So, even if the Taxpayers' interpretation were correct, the Colorado statutes would have to yield.") (citations and internal quotation marks omitted).

### 3.  The information sought by the IRS is relevant

The Appellants likewise have not established a genuine dispute of material fact concerning whether the information sought by the IRS is relevant to the purpose of the investigations.  For instance, the declarations submitted by IRS agents state that METRC data requested in the summonses may show "whether a marijuana business properly reported its gross receipts and allowed deductions for cost of goods sold." Aplt. App., Vol. 2 at 61; *id.*, Vol. 6 at 71; *id.*, Vol. 9 at 184.  The declarations also indicate that information from MED "may be relevant to determine the correctness" of the individual owners' "federal tax returns" and "federal tax liabilities."  *Id.*, Vol. 1 at 74; *id.*, Vol. 6 at 73; *id.*, Vol. 9 at 186.  Given that the IRS "has authority to summon information 'of even *potential* relevance to an ongoing investigation,'" *Standing Akimbo*, 955 F.3d at 1160 (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984)) (emphasis in original), the uncontradicted, sworn statements of knowledgeable IRS agents are sufficient to construe this *Powell* factor in the IRS's favor.  In addition, "the Taxpayers concede that METRC information is relevant in determining whether they trafficked in marijuana—a relevant and proper

17

inquiry the IRS may make in determining § 280E's application." *Id.* (citing *High Desert*, 917 F.3d at 1187, and *Alpenglow*, 894 F.3d at 1197).

### 4. The IRS does not already possess the information summoned

The declarations provided by IRS agents further establish that the Agency does not have the information sought. Among the statements in those declarations are that the documentation provided by Appellants is incomplete, and "[t]he IRS does not already possess the books, papers, records, and other data sought by the summonses issued to MED." Aplt. App., Vol. 1 at 72–74; *id.*, Vol. 2 at 60–62; *id.*, Vol. 6 at 70-73; *id.*, Vol. 9 at 183–86. Like the Taxpayers in *Standing Akimbo*, the Appellants in the case at bar have "failed to demonstrate the existence of a genuine factual dispute whether the IRS already possessed the information summoned." 955 F.3d at 1160.

### 5. The IRS followed all administrative steps

Finally, the IRS declarations show that the Agency adhered to administrative procedures. The agents specifically aver that they "complied with the administrative steps required by the Internal Revenue Code." Aplt. App., Vol. 1 at 74; *id.*, Vol. 2 at 62; *id.*, Vol. 6 at 73; *id.*, Vol. 9 at 186. As stated in *Standing Akimbo*, the Appellants "do not contest on appeal that this factor has been met." 955 F.3d at 1161.

**C. There is no genuine dispute of material fact as to any alleged lack of good faith or abuse of process**

**1.  The IRS's ability to communicate with the DOJ does not evince bad faith**

Citing cases like *Boyd v. United States*, 116 U.S. 616 (1886) and *Marchetti v. United States*, 390 U.S. 39 (1968), the Appellants proclaim that the IRS's refusal to grant immunity constitutes bad faith and makes these proceedings quasi-criminal.  It doesn't.  In the words of *Standing Akimbo*, the Appellants "proffer nothing to support their conclusory assertion that the IRS's refusal to grant immunity turned its civil tax investigation 'quasi-criminal.'"  955 F.3d at 1161.  We observed in *Standing Akimbo* that *Boyd* "dealt with a forfeiture prescribed by a criminal statute as a penalty for committing fraud," and is "inapposite to a strictly civil investigation into whether the Taxpayers violated the tax code."  *Id.* at 1162.  We also commented that the IRS presented sworn testimony that no referral had been made to the DOJ, and "[t]he Taxpayers have offered no evidence that the government is criminally investigating them, let alone that the IRS is involved."  *Id.* at 1162 & nn.12–13; *see also id.* at 1162 (remarking that "the summonses are enforceable notwithstanding the possibility of later referral").  Those rulings apply here.

Moreover, *Standing Akimbo* explains why the *Marchetti* line of cases does not support the Appellants' position.  *Id.* at 1161 & n.11.  We reasoned in *Standing Akimbo* that *Marchetti* does not "remove the IRS's ability to issue summonses under § 7602 when investigating potential § 280E violations."  *Id.* at 1163.  We further recognized that "in *Alpenglow*, we distinguished *Marchetti* and its related cases from

19

the IRS's investigations under § 280E." *Id.* (citing *Alpenglow*, 894 F.3d at 1197).  In

sum, "[t]he *Marchetti* line of cases is inapposite: those cases involve the invocation

of a Fifth Amendment privilege to overcome IRS regulations requiring a taxpayer to

disclose information carrying a real risk of self-incrimination."  *Id.*  Parallel to

*Standing Akimbo*, the Appellants "have not raised a Fifth Amendment challenge on

appeal, and § 280E does not require the disclosure of incriminating information."  *Id.*

### 2. The summonses do not require the creation of reports and are not impermissibly broad

The Appellants next argue that the summonses to MED only vaguely request

"reports," Aplt. Br. at 25–26, and as construed by the district court, the summonses

amount to overly broad fishing expeditions. *Id.* at 35–36.  The Taxpayers in *Standing*

*Akimbo* failed to provide competent evidence that any summons forced MED to

create documents.  955 F.3d at 1163.  The same is true for the Appellants here.

Regardless, if MED "does not have the requested reports, then by the IRS's

guidelines [MED] need not create and produce them.  Nothing requires [MED] to

create the records, and the summons does not purport to say otherwise."  *Id.* at 1164.

This reasoning renders irrelevant Appellants' argument that the IRS should bear the

burden of proving the existence of any requested report.  Aplt. Suppl. Br. at 5–7.

The Taxpayers in *Standing Akimbo* correspondingly provided "no authority for

their contention that the summonses are overbroad," and ignored that "the

summonses specifically describe the information they seek and limit the request to

the tax years in question."  955 F.3d at 1166.  The same holds true in the case at

hand.  "*Powell* does not require that the IRS explain why it seeks information beyond showing its potential relevance to a legitimate purpose.  The IRS has shown the information summoned is relevant, and the Taxpayers failed to rebut this showing." *Id.*; *see also id.* ("The summonses are thus proportionate to the ends sought and are not a 'fishing expedition.'").

### 3.  The IRS does not need probable cause to summon METRC data

Principally relying on *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Appellants contend that they have a reasonable expectation of privacy in METRC information under the Fourth Amendment, requiring the IRS to obtain search warrants supported by probable cause.  After analyzing *Carpenter*'s effect on the "third-party doctrine," we rejected the Appellants' Fourth Amendment argument in *Standing Akimbo*:

> The Taxpayers have no reasonable expectation of privacy in the METRC data collected on their business. . . . "[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."  This principle, known as the third-party doctrine, applies "even if the information is revealed on the assumption that it will be used only for a limited purpose."  The Supreme Court recently reaffirmed this doctrine in *Carpenter*. . . .
>
> Contrary to the Taxpayers' assertions, *Carpenter*'s finding precluding the third-party doctrine's application does not apply to them.  *Carpenter* examined a narrow issue: whether the third-party doctrine should apply to the collection of cell-site-location information (CSLI).  The METRC records differ markedly from CSLI.  METRC tracks the movement of plants, and CSLI tracks people.  Further, the Taxpayers voluntarily provided the information summoned to [MED] so they could legally conduct their business; this differs from CSLI, which collects information without any affirmative act on the part of the user beyond powering up. . . .

> The third-party doctrine applies to the METRC data summoned here. The Taxpayers chose to operate a marijuana business under Colorado law and, thus, agreed to provide certain information to [MED]. . . . The METRC reports are [MED's] property—the Taxpayers have no ownership, possession, or proprietary interest in them. So the Taxpayers have no expectation of privacy in these reports. Because the Taxpayers have no Fourth Amendment right at stake, the IRS need not obtain a warrant supported by probable cause to get the records.

955 F.3d at 1164–65 (quoting *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) and *United States v. Miller*, 425 U.S. 435, 442–44 (1976)) (other citations and internal quotation marks omitted). Additionally, we held that while Colorado law does treat the information as confidential, it also allows disclosure under certain circumstances, and "even if the statute somehow provides the Taxpayers with a right of privacy here, the statute would be preempted by the Supremacy Clause." *Id.* at 1165.

### 4. Enforcing the summonses will not compel a violation of Colorado law

The Appellants insist that enforcing the summonses is improper, because MED cannot disclose METRC information without violating Colorado law. As alluded to above, that argument was dismantled in *Standing Akimbo*. Referencing the current versions of the statutes, we held that state law permits disclosure of confidential data for an authorized purpose, such as "allowing a law-enforcement agency's investigation into a medical marijuana dispensary's unlawful activity." 955 F.3d at 1167 (citing Colo. Rev. Stat. Ann. §§ 44-10-201(4), 44-10-202(3), and 44-10-204(1)). We therefore concluded that a MED employee's compliance with a summons seeking METRC information "would not constitute a crime." *Id.* at 1167-68. For the reasons expressed in *Standing Akimbo*, the Appellants' contrary

interpretation disregards the "plain language" of the statutes and is "unpersuasive." *Id.* at 1168. And a third party, MED, "holds the information," removing any "Fifth Amendment interests" the Appellants otherwise may have had in this data. *Id.*

## III. The district court's dismissal of Speidell's petition on timeliness grounds was proper

As set forth above, Speidell's individual petition to quash fails as a matter of law, irrespective of whether it was timely filed. As the district court recognized, however, Speidell's petition was filed outside of the statutory deadline, robbing the court of subject matter jurisdiction to consider it. Although the United States enjoys sovereign immunity from suit, it has waived immunity to allow a taxpayer to bring a petition to quash a summons seeking information from a third party. *See generally* 26 U.S.C. § 7609. Nevertheless, a taxpayer must file such a petition no later than the twentieth day after notice of the summons is given. 26 U.S.C. § 7609(b)(2)(A); *see also Faber v. United States*, 921 F.2d 1118, 1119 (10th Cir. 1990) ("The government's waiver of sovereign immunity ends—and thus jurisdiction ends—when the twenty-day limitation period has run."). The district court concluded the proof submitted by the IRS showed that Speidell missed this deadline, and Speidell did not present competent evidence to the contrary. Nothing in the appellate record calls into question the district court's finding of untimeliness.

Speidell asserts that the IRS waived sovereign immunity by filing a motion to enforce the summons, and the district court's decision to grant the motion confirms the existence of subject matter jurisdiction. The IRS effected no such waiver. The

IRS phrased its arguments in the alternative, asking the district court to enforce the summons *only* if the court denied the IRS's motion to dismiss pursuant to Rule 12(b)(1). *See* Aplt. App., Vol. 1 at 53 (asking for dismissal on jurisdictional grounds and, "[i]n the alternative," to enforce the summons); *id.* at 54 (seeking enforcement "[i]n the alternative, to the extent Petitioner's arguments are addressed on the merits"); *id.* at 57 (asking for dismissal but, "[i]n the alternative," explaining why Speidell's substantive theories lacked merit); *id.* at 58 (after requesting jurisdictional dismissal, arguing that "In the Alternative, the Petition Fails to State a Claim for Relief") (emphasis omitted); *id.* at 68 ("[T]he Court should issue an order dismissing the petition for lack of jurisdiction.  In the alternative, should the Court address the petition on the merits, it should issue an order dismissing the petition and enforcing the summons issued to MED.").  The IRS thus clearly and unmistakably did not waive sovereign immunity or invite the district court to bypass the issue of subject matter jurisdiction.

Speidell points out that the district court's order not only dismissed his petition to quash, but also purported to enforce the summons.  As the IRS notes on appeal, though, "[t]his was almost certainly just an oversight; the court's opinion dealt only with the jurisdictional issue and did not address the validity of the summons."  Aple. Br. at 25.  At most, the effect of this technical error was to neutralize the "enforcement" provisions of the district court's order.  It did not somehow eliminate the IRS's ability to rely on sovereign immunity or a statutory timeliness argument, and Speidell cites no on-point authority in his opening appellate brief (or in his

appellate reply brief) to prove otherwise.  Aplt. Br. at 9 n.3, 38–39; Aplt. Rep. Br.
at 30–32.[1]  As the Supreme Court has remarked in a related context, "[j]urisdiction
over any suit against the Government requires a clear statement from the United
States waiving sovereign immunity, together with a claim falling within the terms of
the waiver.  The terms of consent to be sued may not be inferred, but must be
unequivocally expressed."  *United States v. White Mountain Apache Tribe*, 537 U.S.
465, 472 (2003) (citations and internal quotation marks omitted); *see also Flute v.
United States*, 808 F.3d 1234, 1239 (10th Cir. 2015) ("[W]e will find the government
has waived sovereign immunity only when its consent to be sued is unequivocally
expressed.") (citation and internal quotation marks omitted).

## IV.  Conclusion

For the foregoing reasons, we AFFIRM the district court's decisions denying
or dismissing the Appellants' petitions to quash and granting the Appellee's motions
to enforce the summonses.

---

[1] Speidell's main case is *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250
(10th Cir. 2007), which involved immunity from federal lawsuits enjoyed by states
under the Eleventh Amendment.  *Id.* at 1252–53.  We recognized that an immunity
waiver may occur "either when a state voluntarily invokes the jurisdiction of a
federal court, or when a state makes a clear declaration that it intends to submit itself
to a federal court's jurisdiction."  *Id.* (citation and internal quotation marks omitted).
Nonetheless, we emphasized that "we will not readily find" such a waiver, *id.*
at 1252, and we rejected a waiver claim in part because a state agency "immediately
contested federal court jurisdiction based on its right to Eleventh Amendment
immunity."  *Id.* at 1256 (citation omitted).  The IRS also immediately contested
subject matter jurisdiction, asking the district court to enforce the summons only if
the IRS lost its jurisdictional challenge.

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

October 20, 2020

Jane K. Castro
Chief Deputy Clerk

Mr. James D. Thorburn
Thorburn Law Group
5640 South Quebec Street, Suite 310
Greenwood Village, CO 80111

RE:     **19-1214, 19-1215, 19-1216, 19-1217, and 19-1218, Speidell, et al., v. United States**
        Dist/Ag dockets: 1:16-MC-00162-PAB, et al.,

Dear Counsel:

Attached is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court


cc:      Charles J. Butler
         Michael J. Haungs
         Nathaniel S. Pollock
         Gilbert Steven Rothenberg


CMW/at